THE PEOPLE, on the relation of J. Averill and others, vs. WORKS, collector of taxes of the town of De Peyster, in St. Lawrence county.

The electors of towns may, at their *annual town meetings*, adopt such rules and regulations as they think proper, for *improving lands owned by the town*, and for *making fences* around the same; but such rules and regulations cannot be adopted at a *special town meeting*.

Even at an *annual town meeting*, a tax cannot be voted for *improving* or *fencing* lands or buildings *not owned* by the town in its corporate capacity; although the town may have an equitable interest in the property, or hires a town house, at the public expense, the electors are not justified in voting a tax for the improvement of property, the title to which is not in the town, and if such tax be imposed, a *writ of prohibition* will be granted.

MOTION for writ of prohibition. At a *special town meeting* held in the town of De Peyster, in May 1831, it was voted to raise $200, by a *tax* on the town, for the purpose of enclosing what was called the *town house* with a *fence*, and to complete the house. The proceedings of the meeting were laid be-

fore the board of *supervisors* of the county, and they passed a resolution to raise the sum voted, by a tax on the town of De-Peyster, and actually assessed the same, and in a warrant signed by the board, the collector of taxes was directed to pay the amount to the supervisors of the town, to be paid over by him to the building committee. Of the amount of $200 assessed, the sum of $146,11, was imposed upon property of the relators. The relators now shewed that the building called a *town house*, was a *church*, built on a lot of half an acre of land conveyed by an insurance company in the city of New-York, to four individuals, designated as *trustees* of the *Bethel Union Society* of the town of De Peyster, and to their *successors in office*; the deed containing a clause that the premises conveyed were to be used and occupied for *a meeting and town house lot*; they further shewed that F. De Peyster, Esq. of New-York, gave $300 towards the erection of the house to be used as a place of religious worship; and that other donors contributed towards the fund with which the building had been erected, with the view of having a house which might be used for religious meetings on the Sabbath, and for town and other public meetings on week days; that it had been fitted up as a church, having a pulpit and pews or slips, the latter of which had been leased or sold to the subscribers to the house; and that religious exercises were held therein by clergymen of different denominations, who visit the town, there being no settled clergyman there. The relators asked for a *a writ of prohibition*, commanding the collector of taxes to desist and refrain from collecting the tax under the warrant; and directing the supervisor of the town not to receive the sum assessed, or if received, not to pay over the same to the building committee.

*Hasbrouck & Fine*, for relators.

*By the Court*, SAVAGE, Ch. J. In England a *writ of prohibition* lies in a variety of cases, and is generally directed to inferior courts, *temporal* as well as *spiritual*. It is the remedy provided by the common law against the encroachment of jurisdiction; to keep inferior courts and tribunals within the

*Margin:* ALBANY. Feb. 1832. The People v. Works.

ALBANY,
Feb. 1832.

The People
v.
Works.

limits and bounds prescribed to them. The reason of prohibitions in general, is that they preserve the rights of the courts and of individuals. The wisdom and policy of the law suppose both best preserved when every thing runs in its right channel; as, if one might be allowed to encroach, another might, and thus confusion be produced in the administration of justice. Jacob's Law Dict. title Prohibition, and Comyn's Dig. same title. By our revised statutes, 2 R. S. 587, § 61, this writ is to be applied for in the same manner as a mandamus, upon affidavit.

The only necessary enquiries in this case are whether the town of Depeyster had power to vote the tax, and whether the same could legally be levied upon the taxable property of the town. By the revised statutes, 1 R. S. 337, each town is a corporation, and has power, among other things, " to purchase and hold lands within its own limits, and for the use of its inhabitants, subject to the power of the legislature over such limits." The electors have power, at their *annual town meetings*, among other things, to make such prudential rules as they may think proper, for the better improving all lands *owned by the town* in its corporate capacity, and for making fences around the same, or any part thereof; 1 R. S. 341, § 5, sub. 10; and town charges include "the monies authorized to be raised by the vote of a town meeting, for any town purpose." 1 R. S. 358, § 2, sub. 3. *Special town meetings* have power to supply vacancies in certain cases; to raise monies for the support of common schools, or of the poor, when those subjects were not acted on at the annual town meetings, and to deliberate in regard to suits for or against the town, and to raise monies therefor; but they have no other power. 1 R. S. 341, § 7. The tax in question was voted at a special town meeting, and therefore clearly irregular and unwarranted by law.

But I am also of opinion that the town has no right to raise money by tax at an *annual town meeting*, to be expended in improving or fencing any lands or buildings, unless such lands or buildings are owned by such town in its corporate capacity. The title to the property in question is in a religious society duly incorporated; and all the interest the town has, consists in a license from the pew holders, to hold their town

meetings in that building. If it be conceded that the town has a right to hire a town house at the public expense, that would not justify a tax for improving property, the title to which is not in the town, in its corporate capacity.

Motion granted without costs.