JAMES L. TRUEHEART vs. THOMAS H. O. S. ADDICKS —Appeal from Bexar County.

The right to examine the returns in county elections, and give certificates to the successful candidates, was vested exclusively in the chief justices of the county courts, by the act "regulating elections," of October 26, 1837; and the 2d section of the act of January 23, 1841, amendatory of the former act, only conferred the power on the associate justices to perform the duties of the chief justice when he was "interested, absent, or unable to perform his duties."

The action of the associate justices of the county courts, in the performance of the duties required of the chief justice, when he is present and not disqualified from acting, is unauthorized, and therefore nugatory and void; and the fact that the chief justice did act in a particular case is conclusive evidence of the want of jurisdiction and authority in the associates.

To set aside an election for mere irregularities on the part of the officers of the election, when there is no suspicion of fraud or unfairness, would be to make the elective franchise a mere mockery.

When a statute requires an act to be done by an officer *within a certain time* for a public purpose, the statute is merely directory, as to the time of performance; and if the officer neglect to perform the duty within the prescribed time, but afterwards perform it, the public shall not suffer by the delay.

This was an application by the appellee to the district court of Bexar county for a peremptory *mandamus* to the appellant to compel him to restore the office, books, papers and records of, and belonging to, the clerk's office of the county court of said county, of which it was alleged he had been illegally deprived, and which were then held by the appellant.

The application was founded on a controversy and dispute which grew out of an election for clerk of the county [218] court, and was resorted to by the parties to determine their respective rights by a judicial decision. The material facts embraced in the controversy being stated in the opinion of the court, it is unnecessary to repeat them here.

*I. A. Paschal*, for the appellant, presented the following points for the consideration of the court:

1st. That the individual in Bexar county who assumed to act as chief justice, in determining the first election to be a tie, and in ordering a new one, was not at the time the chief justice of the county, he having vacated his office by accepting the appointment of interpreter to the United States army under Col. Harney.

2d. That if the chief justice had not vacated his office by the acceptance of another, he was on the 23d, 24th and 25th days of July incapable, from continued and extreme intoxication, of comparing the election returns, and performing the duties of his office connected therewith.

3d. That Whitehead and Lee as associate justices were authorized by law to act in place of the chief justice when that

office was vacant, or the incumbent incapable of performing its duties.

4th. That the associate justices rightfully rejected the poll-book of precinct No. 4.

5th. That the office was vested in the appellant by the certificate of the associate justices, and the lapse of ten days, without contest by appellee.

6th. That the chief justice was precluded from acting in the matter after the action of the associate justices; and

7th. If not precluded, his receiving and counting the poll of precinct No. 4 was illegal, and that he should have rejected it and given the certificate of election to the appellant.

In support of the first and second points, the counsel referred to the testimony in the record; upon the third he referred to the acts of the Texas congress of 1841, p. 68, sec. 2, and of 1842, p. 29 and sec. 1; and also of 1845, pp. 110, [219] 111; and 1836, p. 141, sec. 25, and p. 147, sec. 1. Upon the 4th and 7th points he cited, Acts of Leg. 1846, p. 209, sec. 16; p. 211, sec. 10; p. 210, sec. 7, and p. 213, sec. 16; and to the 5th point, he cited Acts of 1846, p. 214, sec. 21.

*Howard*, for appellee, contended,

1st. That the action of the chief justice was conclusive. It could not be reached except on a charge of fraud. 8 Pet. 729; 16 id. 85; 3 Hill, 45.

2d. The jurisdiction of the associate justices must appear affirmatively on the certificate. 4 J. R. 292; 1 How. 340.

3d. The appointment of a person to a second office, incompatible with the first, is not absolutely void; accepting the second and qualifying, *ipso facto* vacates the first. 3 N. Y. Dig. 595; 2 Hill, 93; 3 id. 243.

4th. It was sufficient that the returns from precinct No. 4 were capable of being made certain by addition. 5 Hill, 623.

5th. The chief justice was not incapable of acting; the best evidence of it is that he decided according to law. In that view of the case, he was more sane than those who objected to the act.

Mr. Justice WHEELER delivered the opinion of the court.

By the agreement of the parties, this cause was referred to the opinion of the judge of the second judicial district, whose decision was in favor of the plaintiff below, and at the fall term, 1846, was made the judgment of the court; from which the defendant appealed.

In the opinion of the judge, which accompanies the record, is presented a clear and succinct statement of the material facts, as follows:

"It appears that the plaintiff and defendant were opposing candidates at the election of the 13th of July last (1846) for the office of county clerk of the county of Bexar; that [220] on the 23d day of July, it being the return day for said election, as well as on the day succeeding, David Morgan, the chief justice of the county, whose duty it was, failed to compare the returns from the various precincts and pronounce the result. That Thomas Whitehead and James B. Lee, two of the county commissioners, claiming to be associate justices of the county court, and as such authorized to act in place of the chief justice, on the 25th of July, or third day after the return day, proceeded to assume and exercise the functions of the chief justice in comparing the returns, pronouncing the result, and issuing certificates of election; that in doing so, they rejected the poll-book of precinct No. 4, and counting only the votes given at the other precincts, pronounced the result to be a majority for defendant, Trueheart, and issued to him a certificate of election, as associate justices acting in place of the chief justice. It further appears that on the same day, after the action of Whitehead and Lee, the chief justice himself proceeded to examine and compare the returns and declare the result; and, adjudging the poll book of precinct No. 4 to be legal, pronounced the result of the election for county clerk to be a tie; and, subsequently, issued a writ, ordering a new election to take place on the 8th day of August, at which election the defendant, claiming the office by virtue of the certificate of Whitehead and Lee, declined the contest, and the plaintiff received all, or nearly all, the votes cast.

The questions presented for our consideration relate to,

1st. The authority of Whitehead and Lee to act in the premises.

2d. The legality of the action of the chief justice, Morgan, in ordering a second election.

We deem it unnecessary to enter into a particular examination of the authority and powers of the county commissioners; for whatever may be their general authority, it is conceded that they could have no authority to act in the present instance, except by reason of the inability to act of [**221**] the chief justice. If the certificate issued by them was even *prima facie* evidence of a right, arising from the presumption that the circumstances existed which were necessary to their rightful exercise of the authority assumed, that presumption was overborne by the fact that the chief justice himself did act in the premises. The jurisdiction rightly belonged to and was exclusively vested in him, while capable of exercising it. Statutes, Oct. 26, 1837, and Jan. 23, 1841. No absolute incapacity seems to have existed. In the language of the judge whose decision we are considering, "There was a chief justice of the county in commission, he was not absent, and his inability to act was, at most, but temporary." The fact that he did act is conclusive evidence of the want of jurisdiction and authority in the commissioners, 16 Pet. 87, and cases cited; 5 Hall, 621, and superseded the necessity of contesting the election; if otherwise it would have been the proper mode of taking advantage of their want of authority. The sole object which such a proceeding could have proposed had already been attained.

The commissioners having, under the circumstances, no jurisdiction of the subject, their certificate could not even give the color of title. 5 Wend. 234; 16 Pet. 85; The People *v.* Stevens, 6 Hill, 616.

3d. As to the legality of the action of the chief justice.

This is denied solely upon the ground that the returns from precinct No. 4 were illegal, and ought not to have been received; for it is admitted that, computing the votes at that precinct, the result was a tie between the opposing candidates, and consequently there was no election.

A number of objections are urged to the legality of the re-

turns in question, the most prominent of which are thus noticed in the opinion of the district judge:

"The objections to this poll-book, on its face, are, that the managers failed to add up the column of votes given to each candidate, and to recapitulate the number given by each, as [**222**] required by law. There is no charge of fraud, and the chief justice could easily make the required addition and ascertain the result. *Id certum est quod certum reddi potest.* If every immaterial omission on the part of the judges of elections were sufficient to destroy the poll-book, the elective franchise would be a mockery."

This is not unlike the view taken by the supreme court of New York, in the case Ex parte Heath and others, 3 Hill, 44, a case involving questions analogous to the present. In delivering the opinion of the court in that case, Judge Cowen remarks: "Once admit the principle that the loss of a part of the votes out of the number which may or should be given at an election avoids the whole, and it is difficult to conceive how a system of government so entirely elective as ours could be carried on. The principle is the same, whether considered in reference to elections in municipal corporations, to county, district, or state elections, or even a federal election for president. That a part of the votes given are lost, is never allowed, *per se*, even in a private corporate election, as a ground for setting the election aside. It is not enough to say the result is therefore uncertain. Yet the contrary rule would be much more tolerable, in the case of private corporations, than in that of large municipal and civil divisions. *To give the loss any effect, it must, at least, be shown that, without its happening, the result would have been different.*" See also 7 Cow. 153, and 20 Wend. 12.

There is no suspicion of fraud, partiality or unfairness in the proceedings at the precinct in question. There is no pretense that the result would have been different had not the irregularities complained of been committed. It is certainly to be regretted that such irregularities should ever exist. In the language of Nelson, Ch. J., in The People v. Stevens, 5 Hill, 627, "Every departure from the course prescribed by the

statute in regard to the returns should be sedulously watched and promptly condemned. It is no answer to say that the aggrieved party has a remedy by *quo* [**223**] *warranto*, by which he can go behind the returns and expose and correct the error. He is not the only person wronged. The electors, nay the whole community, have a deep interest in the question. Besides, the tenure of office under our institutions is in most cases so short that it must frequently expire before the termination of the contest."

But we are not prepared to say that mere irregularities shall be deemed to exclude election returns, when there is no suspicion of unfairness, and when there is no reason to believe that such irregularities have in anywise affected the result of the election. None of the objections urged amount to more than mere irregularities on the part of the officers of the election. To hold these fatal would be nothing less than saying, that the will of the electors, plainly expressed in the forms prescribed by law, may be utterly defeated by the negligence, mistake or fraud of those who are appointed to register the results of an election. To this point is the case of The People v. Vail, 20 Wend. 15. The officers set down, on what they called a canvass sheet, the number of votes given to each of the candidates for the office of county clerk. But in making their official statement, after stating the whole number of votes, *they omitted by mistake to add how many were given to each of the persons voted for by the electors.* The relator was permitted to prove these facts, and that *adding those votes*, he was elected clerk. And the office was thereupon adjudged to him, notwithstanding the irregularity and mistake in the returns, which, when added, gave him the majority of votes; and notwithstanding the certificate of the county commissioners that his opponent was duly elected. To the same effect, also, is the case Ex parte Murphy and others, 7 Cow. 154, where the court say: "To warrant setting aside the election, it must appear affirmatively that the successful ticket received a number of improper votes, which, if rejected, would have *brought it down to a minority.* The mere circumstance that improper votes were received will [**224**] not vitiate an elec-

tion. If this were otherwise, hardly an election in the state could be sustained."

It was not competent for the commissioners, by the usurpation of his authority, to deprive the chief justice of his jurisdiction. Nor did he lose it by delaying his action beyond the period prescribed by the statute (Acts, 213); for, in the language of Judge Cowen in the case before cited, "Nothing is better settled as a general rule, than that where a statute requires an act to be done by the officer within a certain time, for a public purpose, the statute shall be taken to be merely directory; and though he neglect his duty by allowing the precise time to go by, if he afterwards perform it the public shall not suffer by the delay." 3 Hill, 47; 7 Wend. 486-7; 12 Conn. 243, 253-5.

There seem to have been some other points made in the court below, which, however, not being here relied on, we deem it unnecessary to notice.

The chief justice having acted legally in ordering a re-election, the consequence is that the appellee, who received at that election a majority of votes, was entitled to his certificate of election. The judgment is therefore affirmed.

---

[225] MARY C. FLEMMING vs. SAMUEL G. POWELL — Appeal from Harris County.

The provision in the first section of the act of the Texas congress of 1840, p. 153, which gives to an ink scroll the effect of a seal, "provided the person making the same shall, in the body of the instrument, recognize such scroll as having been affixed by way of a seal," does not require the *recognition* to be in any specific terms. If it can be fairly inferred or collected from the body of the instrument, that the party affixing the scroll intended it as a seal, it is sufficient to bring it within the proviso.

Using the words, "in testimony whereof, I have hereunto set my hand and seal," or other equivalent expressions in the attestation clause of an instrument, with a scroll appended, is a sufficient recognition of the scroll, as the seal of the party making the instrument.

A former sheriff, after he has gone out of office, may amend a deed executed by him as sheriff while in office, provided such amendment is only to give to the purchaser more perfect evidence of his right under the deed, and not any new right. [7 Tex. 468: 8 Tex. 36.]