WHIPLEY, Contestant, v. J. H. McKUNE, District Judge
ELECT.

The failure of the officers conducting an election in a given district to be sworn as the
Election Laws provide, will not invalidate the entire election, without reference to
its influence on the general result.

The rule is well settled, that the mere receiving and counting votes, improperly given,
will not invalidate an election.

An act, however erroneous, which does no injury to a party, cannot be the subject of
a legal complaint on his part.

The fact that the ballot-box was temporarily out of the possession of the officers of the
election, will not invalidate the election, especially where no fraud, collusion or
suspicious circumstances are shown.

The provisions of our statute clearly indicate that the Legislature did not mean that
the returns of a candidate should be set aside, where an election was held at the
proper time and place, and for the proper officers, unless it affirmatively appeared
that there was such irregularity as effected the result of the election.

Where such irregularities have occurred, it rests with the contestant to show them.
The returns are *prima facie* evidence of the fact they import; and the returned can-
didate, after being commissioned, is *prima facie* entitled to the office.

APPEAL from the County Court of Sacramento County.

The facts of this case appear in the opinion of the Court.

*J. H. Gass and H. O. Beatty* for Appellant.

The objections to appellant's statement may be resolved into two :
1st. That the statement is not sufficiently specific ; and, 2d. That the
provisions of the statute said to have been violated are merely "direct-
ory," and that they may be disregarded with impunity.

On the first point, the respondent refers to Skerrett's case, reported
in 2 Parsons' Select Equity. In this case it was held, that a general
allegation that A was not duly elected, but that B was, was not suffi-
ciently specific ; but there were other charges of a character very
similar to those contained in the appellant's statement, that were
admitted to be sufficiently specific, and were considered and passed on
as such by the Court. Our statute, sec. 58 of the Election Law, pro-
vides that no statement of the causes of contest shall be rejected, nor
the proceedings dismissed, for want of form, if the particular causes of

contest shall be alleged with such certainty as will sufficiently advise the defendant of the particular proceedings or causes for which such election is contested.

What could be more precise and exact than the allegations of this statement ?   Time, place and circumstances are all given.   For instance, it is charged that the Judges in certain election districts, specifying the districts, were not sworn ; that in a certain district, describing it, so many votes, specifying the number, were counted for the respondent without having been ascertained to have been given for him in the manner required by law, specifying the manner in which they were dealt with ; that in another district, specifying it, the ballot-box was surrendered to the keeping of strangers, etc., etc.   Can it possibly be urged, in the face of such allegations as these, that the respondent was not advised of the nature and character of the irregularities complained of ?   No declaration at common law, no complaint under our Practice Act, would be required to be more specific ; nay, a criminal indictment would admit of less particularity.

Upon the second point :   Are the irregularities complained of in the statement, and admitted by the motion to dismiss, to be committed with impunity ?   Are all the provisions prescribing the mode of conducting to be disregarded, and, at most, to be considered as merely " directory " ?   This is the great point to which the respondent bends his energies.   He cites Cook's case, 14 Barb., and 4 Selden ; the Pennsylvania cases of Boileau, Skerrett, Carpenter and Kneass, reported in 2d Parsons' Select Equity Cases.

It is true, that the Courts of both New York and Pennsylvania held that some of the provisions of the statutes of those States, concerning the mode of conducting elections, were merely directory, and might be disregarded with impunity ; but, upon these cases, we have to remark—*First.* That none of them go so far as the Court is asked to go in this case ; *Secondly.* That they are unsatisfactory, in this—that whilst they declare that some of the statutory provisions are merely directory, they admit that some are mandatory, without furnishing any guide or test by which we may distinguish the one from the other ; *Thirdly.* That upon the particular point—and it is the only one in these cases involved in the case at bar—of the necessity of compliance

with the provision requiring the Judges and Clerks to be sworn, they are directly opposed to the uniform and unbroken current of decision in the House of Representatives. See McFarland v. Purviance, p. 131 ; Same v. Culpepper, 221 ; Easton v. Scott, 272, and Draper v. Johnson, 703, Book of Contested Elections.

It is also to be remarked, that the cases in Barbour, Selden and Parsons, being all upon *quo warranto*, seem to be based mainly upon the indisposition upon the part of the Court to reject votes given under such circumstances, when the effect would be to confer an office upon the candidate who apparently received a minority vote. The whole tone of the opinions show that the decisions might have been far otherwise had the effect of rejecting the irregular vote been, as it would be here, to lead to a new election.

But nowhere has this absurd doctrine, by which the positive provisions of law have been nullified by Courts under the pretense that they were " directory"—a phrase without meaning, and invented for the occasion—been more ably and signally rebuked than in the opinion of this Court in the case of the People v. Weller. There the doctrine is put upon the true ground, and the only one upon which it can be maintained. According to the theory of that opinion, the test of the efficacy of statutory requirements is this : Does the statute affix a penalty to the breach ? Is the disobedience of the essence of the thing required ? In other words—has the penalty been incurred substantially as well as formally ?

It is certainly a little singular, that the Court, in the cases of Skerrett and Carpenter referred to, while treating the statute requiring the officers to be sworn as merely directory, and of no importance, at the same time says, that all presumptions are in favor of the solemn acts of sworn officers of the law, and that they will hesitate to interfere with or set aside the acts of public officers sworn to perform their duties, etc., etc. See 2 Parsons' Select Equity Cases, 520, 540.

Observe how particular is the statute in providing for a faithful record of the ballot before it is destroyed. It shall be, not examined by the Judges—that would be too indefinite—but read aloud, each name separately and distinctly, by one of the Judges, the public looking over his shoulder ; two Clerks shall note each name, as read, by tallies.

Why by tallies ?   Because, to keep count by tally, is to repeat aloud each score, and to proclaim every five, whereby a constant comparison is made by the two tellers, so that any discrepancy between them may be at once ascertained, and immediately corrected.

To say that these requirements are not of the essence of the mode of conducting an election, and that they may be disregarded with impunity, is to say, that the Legislature can throw no guard or checks around the ballot-box, and that bad and dishonest politicians may with impunity commit those outrages at elections which have been the bane and disgrace of California, and which our statute was enacted to prevent.

The 52d section of the Statute concerning Elections, (See Wood's Digest, p. 380) declares that " no irregularity or improper conduct on the part of the Judges, shall be construed to amount to such malconduct as to annul the election, unless the irregularities or improper conduct shall have been such as to procure the person, whose right to the office may be contested, to be declared duly elected, when he had not received the highest number of legal votes."

How is this provision to be construed ?   The respondent contends that it imposes upon the appellant the burden of showing that if the rejected vote had been properly kept and counted, the respondent would not have received the highest number of votes.   We contend, the only effect of the clause is this : although the vote of the precinct or election district may be rejected for irregularity in taking it, if, throwing out the whole vote of the precinct, or rather, giving it all to his opponent, the respondent would still be elected, but by a decreased majority, then the irregularity shall not be permitted to vitiate the election ; and this is perfectly clear from the examination of the next, or 53d section, which is intended to make the same provision for Justices of the Peace, Constables, and other county officers, that the 52d section makes for officers of districts.   Moreover, the construction contended for by the respondent involves an absurdity.   Here the complaint is, that the vote not having been ascertained in the manner provided by law, and the ballots having been destroyed, the result is unascertainable.   To say we are obliged to show how the unascertained and unascertainable vote really stood, would be to require an impossibility.   We show, that of the votes counted for the respondent, a num-

ber greater than the majority by which he was returned, was illegally counted for him. The ballots are gone. When we go behind the return of the Clerk, we are referred to the tally list, and the report thereon of the Judges. Thus is the record substituted for the ballots, upon which the certificate and commission are based, and upon which the respondent ultimately relies. When we have shown that he was returned only by a majority of two hundred and eight; that this return is based upon four or five hundred votes counted for him, which, as far as the law knows, may have been given for anybody else, we have shown malconduct in the Judges, and an impossibility of ascertaining the real result, which, in our humble opinion, vitiates this election.

Suppose the case put by the Court in "The People v. Cook": A gang of rowdies destroy the ballot-box in a particular precinct; the number of votes destroyed are greater than the majority of the returned candidate. Under a provision similar to ours, the New York Court does not hesitate to declare that such a state of things would vitiate the whole election; notwithstanding the contestant could not show that the officer returned would not have been elected if the votes destroyed had been properly counted.

Take the facts as they occurred at Mormon Island and at Folsom, where the ballot-box was exposed to public interference—is this not a substantial disregard of the requirement of the statute? Is it not malconduct on the part of the Judges? and does it not invalidate the vote of those precincts? When the ballot-box, in violation of the careful and stringent provisions of the statute, has been placed in a position where it can be tampered with, does not the law, in its jealousy, infer that it has been tampered with? If not, these provisions are nullities, and there is no mode left us of securing the purity of elections. See the case of the People v. Backus, 5 Cal. 275.

No brief in the record for respondent.

BALDWIN, J., delivered the opinion of the Court—TERRY, C. J., and FIELD, J., concurring.

This proceeding is taken under the statute of this State, (Wood's Dig., pp. 375 to 382) art. 2155, secs. 51 and 52, and the object of

it is to contest and to vacate the election of defendant, McKune, as Judge of the Sixth Judicial District.   The complaint was, on motion, dismissed by the County Judge, before whom the proceedings were had; and this appeal is from that order.   The effect of this motion is not greater than that of a general demurrer, and if that could not be sustained, neither could this motion be.   This involves an inquiry into the legal sufficiency of the complaint.   The complaint alleges that, at the general election in September last, McKune was returned as having received two thousand six hundred and thirty-four votes for this office, and that C. T. Botts, his only competitor, received two thousand four hundred and twenty-six votes; and that McKune, receiving his certificate, was commissioned for six years.

The first specification is, that the returns are irregular, null, and void, in this :   That, in the First District of the City of Sacramento, where three hundred and nine votes were returned for McKune, neither the Judge, Inspector, nor Clerk, conducting the election, were sworn, as the law required.

It will be seen that no charge of the fraud is made in this allegation, nor of collusion between McKune and these officers, nor of willful neglect of duty on the part of the officers, nor that the vote for McKune, so returned from these polls, was larger than the vote returned for Botts, nor that McKune received any benefit, or Botts any injury, by the counting in of the votes so returned.   The naked question presented by this specification is whether the failure of the officers, conducting an election in a given district, to be sworn, of itself invalidates the entire election, without reference to its influence or the result. This proposition cannot for a moment be maintained.   If it could, no State, or even County election, ever would stand; for, probably, no election has ever occurred in the State, at which some informality, of equal grade and importance to this, did not occur.

The rule is well settled that the mere receiving and counting of votes, improperly given, does not invalidate an election.   This has been held in New York, in Massachusetts, Pennsylvania, and many other States; indeed, everywhere, we believe, where the question has been raised.   The universal rule is, that an act, however erroneous, which does no injury to a party, cannot be the subject of legal complaint on

his part.    Our statute is conclusive on this point.    Art. 2156, sec. 52, declares " that no irregularity or improper conduct in the proceedings of the Judges, or any one of them, shall be construed to amount to such malconduct as to annul or set aside any election, unless the irregularity or improper conduct shall have been such as to procure the person whose right to the office may be contested, to be declared duly elected, when he had not received· the highest number of legal votes."    This specification, therefore, is manifestly bad.

The next is " of the votes as given for the said McKune, in the said district, two hundred thereof were not ascertained to have been written on, or printed on any ballot, as the law directs ; but were guessed at, or inferred thereon.    That the Judges, Inspectors or Clerks, failed to keep any legal tally paper in said district, and failed to return any tally paper to the Clerk of the County of Sacramento."    It is not easy to see what the precise charge is, which the pleader meant to convey by this statement ; nor do the counsel for the appellant agree in their explanations at the bar.    Whatever it was it seems liable to the same objections already made ; for it is not shown that there was a miscount of legal votes in favor of McKune.    The only just complaint which could be made in this connection is, that votes were counted for McKune, which he did not receive ; and, whether the votes were guessed at or not, if the guess was not erroneous, no injury could possibly result to Botts on that account.    The specification as to the keeping of the tally will be noticed hereafter.    It is to be observed that it is not alleged that a tally paper was not kept, but that no legal paper ; this is a conclusion, not a fact. ·

The complaint then states, that of the votes so returned, as given for McKune, twenty-eight were given and intended for Botts, and should have been so counted.    This is a good statement, as showing an error of twenty-eight votes against McKune.

The next specification has been already answered. ' It merely charges that, in the Second District, neither the Inspector, nor Judges, nor Clerk, were sworn.    That three hundred and sixteen votes were returned as given for McKune in this district ; and, of the votes, eighty were *never ascertained to have been* written or printed upon any ballot ; but were guessed at or inferred to be thereon.    In another

part of this specification, that twenty-three of the votes counted for McKune, were really given for Botts.   This last statement is sufficient so far as it goes; the rest is bad.

The next specification is like the above, except that it refers to the Fourth District, in Sacramento; twenty-two votes for Botts, counted for McKune.

The next is also similar, applying to the Third District; ten votes for Botts, counted for McKune.

The next specifications are as follow:  " And the said Daniel H. Whipley is informed and believes, and so charges the truth to be, that at the precinct of Folsom, in the township of Granite, in the district aforesaid, one hundred and twenty-five votes were returned as having been given for the said McKune, as aforesaid, and that thirteen were given and intended for the said Botts, and should have been so counted, and that the Judge, Inspectors, and Clerks of the said precinct were guilty of misconduct in this : that they permitted the ballot-box to be removed from the room in which the election was held, before the ballots were counted ; and the said ballot-box, when removed as aforesaid, was left in charge of a person who was neither a Judge, Inspector nor Clerk of said election."

And the said Daniel H. Whipley further states, that he is informed and believes, and so charges the truth to be, that from the precinct in the township of Sutter, known as the " Cottage," one hundred and sixty-eight votes were returned as having been given for McKune, as aforesaid ; that of the said votes one hundred and twenty-six were never ascertained to have been written or printed upon any ballot deposited in the manner prescribed by law, but the same were inferred or guessed at, and so illegally returned for said McKune, as aforesaid ; that neither the Judges, Inspectors nor Clerks were sworn at said precinct ; and that the ballot-box was removed from the room in which the election was held, and committed to the custody of persons who were neither Judges, Inspectors nor Clerks of said election, before the ballots were counted ; that, in running out or counting up the tallies at said precinct, nine votes which were cast for Charles T. Botts were omitted—his vote being run out eight, when it should have been seventeen at that precinct.

And the said Daniel H. Whipley further states, that he is informed and believes, and so charges the truth to be, that, at the precinct known as " Mormon Island," in the said district, where thirty-eight votes were returned as having been given for the said McKune, as aforesaid, the ballot-box was removed from the room in which said election was held, and intrusted to the custody of a person who was neither a Judge, Inspector nor Clerk of said election, before said votes were counted.

And the said Daniel H. Whipley further states, that the precinct known as " Michigan Bar," in said District, where one hundred and two votes were returned as having been given for said McKune, as aforesaid, sixty of which were never ascertained to have been written or printed on any ballot, deposited in the manner prescribed by law; but the same were inferred or guessed at, and so illegally and improperly counted for the said McKune.

And the said Daniel H. Whipley further states, that he is informed and believes, and so charges the truth to be, that at the precinct known as " The Magnolia," in the township of Brighton, in the county aforesaid, from which fifty-eight votes were returned as having been given for the said McKune, as aforesaid, neither the Judges, Inspectors nor Clerks of the election were sworn; and that the ballot-box at said precinct was removed from the room in which said election was held, and was intrusted to the keeping of a person who was neither a Judge, Inspector nor Clerk of said election, before the ballots deposited therein were counted.

The only questions which it is necessary to consider are these : 1. Does the mere failure of the officers of elections, to qualify according to law, vitiate the election ?    2. Does the fact that the ballot-box was out of the possession of the officers of the election—no fraud, or collusion, nor circumstances of suspicion being shown—have that effect ?

Unquestionably public policy requires that every safeguard should be thrown around the elective franchise, and every protection which can shield the ballot-box from corrupt or improper influences given to it.    But a strictness of requirement which, from the mere fact of the existence of informalities not shown to be injurious in their results, would suppress the declared will of the people constitutionally

expressed, leads to as dangerous consequences. We consider the law well settled by authority, that the mere failure of the officers to take the oath does not invalidate the election. If this were so, it might lead to more fraud than it would prevent; for these officers might omit the oath for the purpose of throwing out the votes of a precinct. The following cases hold the doctrine just anounced : Truehart v. Alldrick, 2 Texas, 217 ; People v. Cook, 14 Barbour, 259 ; 19 Wend. 139 ; 4 Denio, 168 ; 14 Pickering, 236 ; 16 Pickering, 153 ; and this is supported by the universal rule, that where one acts under color of office, his acts are binding, though not legally qualified : People v. Bartlett, 6 Wend. 422. In 2 Parson's Equity Cases, these questions are all reviewed with learning and ability, and the same doctrine is held. But it is useless to consume time in citing authorities from other States, for the Statute of California, already quoted, is decisive on the point. And we think it equally clear on the other and remaining proposition, which is, that the ballot-boxes at two precincts were not all the time within the view and control of the Inspectors, etc. It is observable that no charge of suspicious circumstances, or of any actual fraud is made in this connection ; nor is it shown that any votes were changed, or any alteration made of ballots, or the result in any way affected by this circumstance ; nor does it appear for what length of time, nor in what way, nor under what state of facts this was done or permitted. We presume it would not be contended, that if the officers happened to lose sight of the box for a moment, or in case of a row, or a fire, they rushed out of the room, leaving the box, that this would constitute any sufficient cause for invalidating the returns or votes. If the question was connected with circumstances of suspicion, the case might be different ; but if we were to hold that this circumstance alone, as stated, invalidated the returns, it would be in the power of any officer or other persons to defeat an election, by throwing the ballot-box out of the window, or carrying it to the next room.

The following provision of the statute plainly indicates for what grounds the contest may be maintained :   1. For malconduct on the part of the Board of Judges, or any member thereof.   2. When the person whose right to the office is contested, was not, at the time of

the election, eligible to the office.   3.  When the person elected shall have been convicted of crime, etc.   4.  When the person elected shall have given a bribe to the Judges, etc.   5.  On account of illegal votes. Then follows the 52d section already quoted.   The 53d section provides, that when an election is contested on account of any malconduct on the part of the Board of Judges of any township election, or any member thereof, the election shall not be annulled and set aside upon any proof thereof, unless the rejection of the vote of such township or townships shall change the result as to such office in the remaining vote of the county.   Sec. 54 provides that nothing in the fifth ground of contest shall be so construed as to authorize an election to be set aside on account of illegal votes, unless it shall appear that an amount of illegal votes shall have been given to the person whose right to the office is contested, which, if taken from him, would reduce the number of his votes below the number of votes given to some other person for the same office, after deducting therefrom the illegal votes which may be shown to have been given for such other person.

These provisions very clearly indicate that the Legislature did not mean that the returns of a candidate should be set aside when an election was held, at the proper time and place, and for the proper offices, unless it affirmatively appeared that there was such irregularity as affected the result of the election; and when these irregularities of mere mode occur, it rests with the contestant to show that they changed the result.   Indeed, as the returns are *prima facie* evidence of the facts they import, and as the returned candidate—especially after being commissioned—is *prima facie* entitled to the office, the contestant must show that the election was not only conducted irregularly, but that in consequence of irregularities, the declared result was different from what it would otherwise have been.

The complaint, taking such portions of it as is sufficiently stated for true, does not show enough to entitle the contestant to his prayer; for the votes improperly counted for McKune, transferred to the list of Botts, are not enough to change the result.

The judgment is affirmed.