## THE UNITED STATES ex rel. DEFFER

*v.*

## KIMBALL.

Police Court; Writ of Prohibition.

Where the defendants in a prosecution in the police court plead not guilty and go to trial upon that issue, they cannot after conviction and before sentence obtain a writ of prohibition from a superior court to restrain and prohibit the imposition of sentence in the police court, upon the ground that it had no jurisdiction to try the case, especially where there are other remedies open to them.

No. 498.   Submitted December 5, 1895.   Decided January 6, 1896.

Hearing on an appeal by the petitioners from a judgment denying an application for a writ of prohibition to one of the judges of the police court in the District of Columbia. *Affirmed.*

The Court in its opinion stated the case as follows:

This was an application to the court below made by certain linemen as relators, employed by the Postal Telegraph-Cable Company, a corporation of the State of New York, for the writ of prohibition to Ivory G. Kimball, one of the judges of the police court of the District of Columbia, to prohibit proceedings in that court.

In the petition it is alleged, that the relators, Philip A. Deffer and Harry Smith, are employees of the Postal Telegraph-Cable Company, and that they were arrested, tried and convicted in the police court before Judge Kimball, one of the judges thereof, upon an information charging them as private persons, with occupying Ninth street, Northwest, by stringing telegraph wires over, along, and across said street for private purposes, contrary to and in violation of an ordinance of the late corporation of the city of Washington, approved November 22, 1862.

The parties accused went to trial on the plea of " not guilty ;" and after conviction, but before sentence, they filed their petition in the court below for a writ of prohibition against Judge Kimball to restrain and prohibit him from passing sentence upon them. The respondent demurred to the petition, and the demurrer was sustained by the court below, and the petition was dismissed, and the relators have appealed.

*Mr. Perry Allen* and *Mr. J. Hubley Ashton* for the appellants.

*Mr. S. T. Thomas*, Attorney for the District of Columbia, and *Mr. Andrew B. Duvall*, Assistant Attorney, for the appellee.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

The demurrer admits the facts, though not the legal construction alleged of the statutes and ordinance referred to in the petition ; nor the alleged want of power or authority

to pass the statute or ordinance complained of. The questions supposed to be raised on the petition are of great public importance, and they have been argued very fully and ably.

It is contended on the part of the relators, that the court below erred in holding to be valid and enforceable the ordinance of the late corporation of this city, of November 22, 1862, entitled "An act in relation to the public squares, reservations, streets," &c.; that it also erred in holding that this ordinance, if valid, could be enforced against telegraph companies, operating their lines under and according to the terms and provisions of the act of Congress of July 24, 1866, known as the National Telegraph Act, and now embodied in sections 5263 *et seq.* of the Revised Statutes of the United States ; and that the court also erred in refusing the writ when it was clear, as contended by the relators, that the inferior court had exceeded or abused its jurisdiction.

The object of the allegations in the petition is to raise a question of jurisdiction of the police court to take cognizance of and try the case of the relators upon the charge made against them. The want of jurisdiction in the police court is the sole ground upon which the application for the writ of prohibition is made; and, indeed, that writ only lies from a superior to an inferior tribunal for the want of jurisdiction in the latter. The writ of prohibition is an original remedial writ, and is the remedy afforded by the common law against the usurpation or encroachment of jurisdiction by inferior courts, and is only issued to keep such inferior courts within the limits and bounds prescribed to them by law. *People v. Works,* 7 Wend. 486; *Ex parte Roundtree,* 51 Ala. 42 ; High, Ex. Rem. 604. The writ does not issue as matter of right, but is issued in the exercise of a sound judicial discretion, according to the circumstances of each individual case. And as said by Mr. High in his work on Extraordinary Remedies, page 606, the writ "being a prerogative writ, it is to be used, like all other prerogative writs, with

great caution and forbearance, for the furtherance of justice and to secure order and regularity in judicial proceedings when none of the ordinary remedies provided by law are applicable. Nor should it be granted except in a clear case of want of jurisdiction in the court whose action it is sought to be prohibited."

" Another fundamental principle,"_says the author, " and one which is to be constantly borne in mind in determining whether an appropriate case is presented for the exercise of this extraordinary jurisdiction, is, that the writ is never allowed to usurp the functions of a writ of error or *certiorari*, and can never be employed as a process for the correction of errors of inferior tribunals. And the courts will not permit the writ of prohibition, which proceeds upon the ground of an *excess* of jurisdiction, to take the place of or be confounded with a writ or error, which proceeds upon the ground of error in the exercise of a jurisdiction which is conceded. The proper function of a writ of prohibition being to check the usurpations of inferior tribunals, and to confine them within the limits prescribed for their operation by law, it does not lie to prevent a subordinate court from deciding erroneously, or from enforcing an erroneous judgment in a case in which it has a right to adjudicate. In all cases, therefore, where the inferior court has jurisdiction of the matter in controversy, the superior court will refuse to interfere by prohibition, and will leave the party aggrieved to pursue the ordinary remedies for the correction of errors, such as the writ of error or *certiorari*. In the application of the principle, it matters not whether the court below has decided correctly or erroneously ; its jurisdiction being conceded, prohibition will not go to prevent an erroneous exercise of that jurisdiction. Nor will the court which is asked to grant the writ consider whether the court below erred in the exercise of its powers, since it has nothing to do with the correctness of the rulings of the inferior court, but only with its excess of jurisdiction." High, Ex. Rem. 612, 613.

And in the case of *Smith* v. *Whitney*, 116 U. S. 167, where the nature and office of the writ of prohibition, and the conditions under which it will be issued, are fully discussed, it is said that "where the inferior court has clearly no jurisdiction of the suit or prosecution instituted before it, and the defendant therein has objected to its jurisdiction at the outset, and has no other remedy, he is entitled to a writ of prohibition as matter of right; and a refusal to grant it, where all the proceedings appear of record, may be reviewed on error." That "the object of a writ of prohibition is to prevent a court of peculiar limited or inferior jurisdiction from assuming jurisdiction of a matter beyond its legal cognizance. It can only be issued to restrain the exercise of judicial functions." And further, that "a writ of prohibition is never to be issued unless it clearly appears that the inferior court is about to exceed its jurisdiction. It cannot be made to serve the purpose of a writ of error or *certiorari*, to correct mistakes of that court in deciding any question of law or fact within its jurisdiction. These rules have been always adhered to by this court, in the exercise of power expressly conferred upon it by Congress to issue writs of prohibition to the District courts sitting as courts of admiralty."

The question being as to the jurisdiction of the police court, it is necessary to see in what terms that jurisdiction is conferred. By the act of Congress of March 3, 1891, ch. 536, relating to and defining the jurisdiction of the police court, it is declared that "the police court of the District of Columbia shall have *original jurisdiction concurrently* with the Supreme Court of the District of Columbia, of all crimes and offences hereafter committed against the United States, not capital or otherwise infamous, and not punishable by imprisonment in a penitentiary, committed within the District of Columbia, except libel, conspiracy, and violations of the postoffice and pension laws of the United States; *and also of all offences hereafter committed against the laws, ordinances, and regulations of the District of Columbia*," &c.

The terms of this statute make it very clear that all the ordinances of this District, relating to crimes and offences, furnish subjects for the exercise of the jurisdiction of the police court. The ordinance in question, being that approved November 22, 1892, is still among those supposed to be in force, and if there ever was ground for questioning its validity, and continued force, that ground would seem to have been removed, by implied adoption and ratification, by the acts of Congress of February 21, 1871, and of July 18, 1888. *Mattingly* v. *District of Columbia*, 97 U. S. 687. The ordinance in question declares that—

" No open space, public reservation, street, or any public grounds in this city shall be occupied by any private person or for any other private purpose whatever, under a penalty of not more than fifty dollars nor less than twenty-five dollars per day for every day, or part of a day, any such place shall be so occupied ; to be collected as other fines, penalties and forfeitures are collected for the use of the city."

This ordinance appears to have been adopted from a clause in section 13 of the act of Congress of May 17, 1848, c. 42 ; and the penalties were added in order to give the provision of the statute full force and effect. The subsequent incorporation of the provision of the statute of 1848 into the Revised Statutes of the United States relating to the District of Columbia, as section 222, certainly had no such effect as that of repealing the ordinance of 1862. In revising the statutes it was clearly not the intention of the revisors, nor within the contemplation of Congress, that the pre-existing ordinances of the city should be repealed or nullified. If the ordinance was originally valid, and remained in force at the time of the revision, it remained good thereafter, until repealed by an act of Congress. The ordinance, assuming it to have been originally valid, was in force February 21, 1871, when the corporation of Washington was abolished ; and by the act of Congress of that date, changing the form of goverment for the

District, it was expressly declared " that the ordinances of the cities of Washington and Georgetown, and the levy court, except as modified or repealed by Congress, or the legislative assembly, shall remain in full force." And the power of the Commissioners of the District over the streets of the city, with respect to the use of them for maintaining telegraph, telephone, electric lighting, or other wires, is fully recognized by the act of Congress of July 18, 1888; thus showing that it was not the intention of Congress, when it passed this latter act, to recognize any vested right in any telegraph, telephone or electric light company, to use or occupy the streets or avenues of the city with their lines or wires in their own way, and without regard to the rules and regulations that might be prescribed by the Commissioners.

But whether the ordinance of 1862 was originally void, as applied to streets and avenues, as being in excess of power to make it, or whether it has been repealed by subsequent legislation, as contended on behalf of the relators; or whether the act of July 24, 1866, entitled " An act to aid in the construction of telegraph lines and to secure to the Government the use of the same for postal, military, and other purposes," now embraced in sections 5263 to 5268 of the Revised Statutes of the United States, conferred upon the Postal Telegraph-Cable Company any such vested rights to the use of the streets of the city for stringing and maintaining their wires, as are now claimed, and such as Congress could not restrict or impair by the act of July 18, 1888, are questions that we do not propose to discuss or decide in this case. The decision of such questions is not required for the disposition of this case; as in our view there is no sufficient ground shown for the granting of the writ of prohibition, whether those questions were decided the one way or the other. The relators, the parties prosecuted, instead of pleading to the jurisdiction of the court in the first instance, if they supposed the question of jurisdiction to be involved, pleaded not guilty and

went to trial upon that issue.   They took their chances of acquittal on the facts of the case, and were convicted.   If there be error committed by the trial court in assuming jurisdiction the parties are not without means of relief.   If there be any real doubt as to their right to writ of error under section 4 of the act of Congress of March 3, 1891, ch. 536, there would certainly be no question of their right to *certiorari*, if jurisdiction be wanting in the court below. Nor would there by any doubt of their right to discharge on *habeas corpus*, if convicted without jurisdiction.   And if the Postal Telegraph-Cable Company deems its rights or franchises under the statute unduly and injuriously restricted or impaired by the action, or threatened action, of the Commissioners of the District, in the exercise of the powers claimed by them over the streets and avenues of the city, that corporation has ample means of relief against any violation of vested rights.   It may file its bill in equity to restrain the doing of anything that impairs any vested rights it may have under the statute, and that remedy is very much more appropriate than prohibition by its employees.   *Osborne* v. *Bank United States*, 9 Wheat. 738.

It has been but recently held by the Supreme Court of the United States (*In re Chapman*, 156 U. S. 211), that, in the orderly administration of justice, the object is better subserved, by declining to exercise appellate jurisdiction in any manner, until the conclusion of the proceedings ; and that it is a judicious and salutary general rule not to interfere with proceedings in the courts of this District, in advance of their final determination.

We are of the opinion that the judgment of the court below, sustaining the demurrer and dismissing the petition, must be affirmed ; and it is so ordered.

*Judgment affirmed.*