

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Game, Fish and Oyster Commission
Austin, Texas

Attention:  Mr. H. D. Dodgen

Dear Sir:

Opinion No. 0-1285
Re: Persons, firms or corporations
required to hold fish and oyster
dealers' licenses and related
matters.

Your request for an opinion on the questions as are herein stated has been received by this department.

Your letter reads in part as follows:

"1. Is a person, firm or corporation, in Texas, required to hold a fish and oyster dealers license when engaged only in the business of soliciting and/or accepting orders for edible aquatic products when said products are to be delivered to the consumer by associates from outside or inside the boundaries of this state?

"2. Is the person or firm who delivers edible aquatic products by motor vehicle from outside Texas required to hold a fish and oyster dealers license when said products were sold prior to entering Texas with the cargo?

"3. Is a person, firm or corporation who delivers edible aquatic products from outside of this state, to consumers within the state, upon orders received before entering Texas, entitled to resell, in Texas, such products, as may be refused by the customer, without a fish and oyster dealers license?

"4. Is a fish and oyster dealers license transferrable when the business to which it was issued changes ownership? Also, is a fish and oyster dealers license transferrable to a new business location under the same ownership?"

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

You inform us that you refer to the various licenses required by Article 934a of the Penal Code.

Article 934a of the Penal Code reads in part as follows:

"Sec. 1. The following words, terms and phrases used in this Act are hereby defined as follows:

"(a) A 'Commercial Fisherman' is any person who takes fish or oysters or shrimp or other edible aquatic products from the waters of this State, for pay, or for the purpose of sale, barter or exchange.

"(b) A 'Wholesale Fish Dealer' is any person engaged in the business of buying for the purpose of selling, canning, preserving or processing, or buying for the purpose of handling for shipments or sale, fish or oysters or shrimp or other commercial edible aquatic products, to Retail Fish Dealers, and/or to Hotels, Restaurants or Cafes and to the Consumer.

"(c) A 'Retail Fish Dealer' is any person engaged in the business of buying for the purpose of selling either fresh or frozen edible aquatic products to the consumer.

"(d) A 'Bait Dealer' is any person engaged in the business of selling either minnows, fish, shrimp or other aquatic products, for fish bait.

"(e) A 'Fish Guide' is any person who operates a boat for pay or anything of value, in accompanying or transporting any person engaged in fishing in the waters of this State.

"(f) 'Person' shall include the plural as well as the singular, as the case demands, and shall include individuals, partnerships, associations and corporations.

"(g) 'Population' is determined as shown by the last or any subsequent Federal Census.

"License required

"Sec. 2. Before any person in this State shall engage in the business of a 'Commercial

Game, Fish and Oyster Comm., Attention: Mr. H. D. Dodgen,
Page 3

Fisherman', 'Wholesale Fish Dealer', 'Retail
Dealer', 'Bait Dealer', 'Fish Guide'; or use
or operate a shrimp trawl, net or seine, oys-
ter dredge, boat or skiff, for the purpose of
catching or taking any edible aquatic life
from the waters of this State for pay, barter,
sale or exchange, the proper license provided
for in this Act privileging them so to do shall
first be procured by such person from the Game,
Fish and Oyster Commission of Texas or from one
of its authorized agents.

"License fees

"Sec. 3. The licenses and the fees to be
paid for the same are hereby provided for in
this Act and are as follows:

"1. Commercial Fishermen's License, fee
Three Dollars ($3).

"2. Wholesale Fish Dealers' License, fee
for each place of business, Two Hundred Dollars
($200).

"2-a. Wholesale Truck Dealers' Fish License,
fee for each truck, One Hundred Dollars ($100).

"3. (a) Retail Fish Dealers' License, fee
Three Dollars ($3) for each place of business in
each city or town of less than seven thousand,
five hundred (7,500) population.

"(b) Retail Fish Dealers' License, fee Ten
Dollars ($10) for each place of business in each
city or town of not less than seven thousand,
five hundred (7,500) and not more than forty
thousand (40,000) population.

"(c) Retail Fish Dealers' License fee Fif-
teen Dollars ($15) for each place of business in
each city or town of more than forty thousand
(40,000) population.

"(d) Retail Oyster Dealers' License, per-
mitting the sale of oysters only, fee Five Dol-
lars ($5) for each place of business in each city

or town of more than seven thousand, five hundred (7,500) population. The sale of any fresh or frozen edible aquatic products, other than oysters, by a retail fish dealer possessing the license named in this subsection, shall constitute a violation of this Act.

"(e) Retail Dealers' Truck License, permitting the sale of edible aquatic products from a motor vehicle to consumers only, fee Twenty-five Dollars ($25) for each truck; provided the owner of any retail fish dealers' license issued since September 1, 1934, for a place of business in a city or town of more than five thousand (5,000) population, shall be entitled to a rebate on the same when said owner of such license shall furnish the Game, Fish and Oyster Commission a claim sworn to for said amount. When such claim is found to be correct and is approved by the Executive Secretary of said Commission, same shall be paid out of any moneys available in the State Treasury upon warrant issued by the State Comptroller.

"4. Bait Dealers' License, fee Two Dollars ($2) for each place of business.

"5. (a) Shrimp Trawl License, for each boat operating or towing a trawl not more than ten (10) feet in width at the mouth, and not more than twenty (20) feet in length, fee Two Dollars ($2).

"(b) Shrimp Trawl License, for each boat operating or towing a trawl more than ten (10) feet wide at its mouth or more than twenty (20) feet in length, fee Fifteen Dollars ($15); which said license shall permit the use of a 'try net' as auxiliary to said trawl.

"6. Seine or Net License, to be of metal, for and to be firmly attached to each one hundred (100) feet or fraction thereof, fee One Dollar ($1) for each one hundred (100) feet of the length thereof.

"Provided, no license shall be issued for any seine or net longer than eighteen hundred

Game, Fish and Oyster Comm., Attention: Mr. H. D. Dodgen,
Page 5

(1800) feet, and also provided that after the
passage of this Act no license shall be issued
for any seine or net, the meshes of which are
less than one and one-half (1½) inches from
knot to knot.

"7. Fish Boat License, for boats equipped
with a motor of any kind or with sails, fee
Three Dollars ($3).

"8. Skiff License, for boat propelled by
oars or poles, to be of metal and firmly attach-
ed to skiff, fee One Dollar ($1).

"9. Oyster Dredge License, fee Fifteen
Dollars ($15).

"10. Fish Guide License, fee Two Dollars ($2).

"11. Place of business, as used in this Act,
shall include the place where orders for aquatic
products are received, or where aquatic products
are sold, and if sold from a vehicle, the vehicle
on which, or from which such aquatic products are
sold, shall constitute a place of business. The
license shall at all times be publicly displayed
by the dealer in his place of business so as to
be easily seen by the public and the employees of
the Game, Fish and Oyster Commission. And if any
aquatic products are transported for the purpose
of sale in any vehicle the license required of
such dealer shall be displayed inside of such ve-
hicle. Provided that no person shall bring into
this State any aquatic products and in this State
offer same for sale without procuring the license
required for such a transaction by a dealer in
this State, and the fact that such aquatic products
were caught in another State shall not entitle the
person claiming to have caught them to sell same
in this State as a commercial fisherman."

Article 934a, Penal Code, supra, among other things,
provides that no person shall engage in the business of re-
tail dealer in either fresh or frozen edible aquatic products
without procuring a license from the Game, Fish and Oyster
Commission; and that the licensee shall pay an annual tax of
Three Dollars in any city or town of less than 5,000 population,
Ten Dollars in any city or town of not less than 5,000 and not

more than 40,000 population, and Twenty Dollars in any city
or town of more than 40,000 population; and the failure to
pay the tax and procure the required license shall consti-
tute a misdemeanor for which the person offending may be
punished by a fine of not less than Ten nor more than Two
Hundred Dollars.  Also the Act provides that no person shall
engage in the business of wholesale dealer of fish, oysters,
shrimp, or other commercial edible aquatic products without
paying an annual tax of Two Hundred Dollars and procuring a
license from the Game, Fish and Oyster Commission; and that
failure to pay the tax and procure the license shall consti-
tute a misdemeanor punishable as in the case of a retail
dealer.  The pertinent definitions set forth in the Act are
as follows:

"A 'Wholesale Fish Dealer' is any person
engaged in the business of buying for the pur-
pose of selling, canning, preserving or pro-
cessing, or buying for the purpose of handling
for shipments or sale, fish or oysters or shrimp
or other commercial edible aquatic products, to
Retail Fish Dealers, and/or to Hotels, Restau-
rants or Cafes and to the Consumer.

"A 'Retail Fish Dealer' is any person
engaged in the business of buying for the pur-
pose of selling either fresh or frozen edible
aquatic products to the consumer."

It is clear from a reading of the definitions of
dealers that one who confines his business to selling to
the consumer is required to pay the tax provided for retail
dealers, and that the amount of such tax is determined by
the population of the city or town in which the occupation
is pursued.  It is true that the wholesale dealer is permitted
to sell to the consumer.  However, when he has paid the tax
required of wholesale dealers he is authorized to extend his
operations.  For example, in addition to selling the consumer,
he may buy for the purpose of canning and may buy for the
purpose of selling to retail dealers.  For the privilege of
extending his operations beyond those of a retail dealer, he
pays a higher tax.  (Ex parte Mehlman, 75 S. W. (2d) 689;
Greiner vs. State, 75 S. W. (2d) 1110).

Article 7055 and 7056, Vernon's Civil Statutes
reads as follows:

367

"Art. 7055. Any person, firm, corporation, or association of persons, who shall be the legal owners or holders of any unexpired occupation license issued in accordance with the laws of this State, may transfer the same on the books of the officer by whom the same was issued.

"Art. 7056. The assignee or purchaser of such unexpired occupation license shall be authorized to pursue such occupation under such unexpired license for and during the unexpired term thereof, provided that such assignee or purchaser shall, before following such occupation, comply in all other respects with the requirements of the law provided for in the original applications for such licenses. Nothing in this law shall be so construed as to authorize two or more persons, firms, corporations or associations of persons to follow the same occupation under one license at the same time. Whenever any person, firm, corporation or association of persons following an occupation shall be closed out by legal process, the occupation license shall be deemed an asset of said person, firm, corporation or association of persons, and sold as other property belonging to said person, firm, corporation, or association; and the purchaser thereof shall have the right to pursue the occupation named in said license, or transfer it to any other person; provided, such occupation license shall under no circumstances be transferred more than one time."

Ordinarily a license is a mere personal privilege which may not be assigned. But by express provisions of the above quoted statute an unexpired occupation tax license is transferrable one time. A failure to comply with a provision of statute directing the transfer of a license to be recorded on the books of the officer who issues it does not void the transfer as between the parties, such a provision being not for their benefit but for that of the state. The assignee of a license acquires the same right that his assignor had to pursue the occupation during the unexpired portion of the term; but an attempt to make a second transfer in contravention of an express provision of the law will

be nugatory.  See Tex. Jur. Vol. 27, p. 905.

The case of Asher v. Texas, 128 U. S. 129, holds that a state law exacting a license tax to enable a person within the state, to solicit orders and make sales there for a person who is residing within another state, is repugnant to that clause of the Constitution of the United States which gives Congress the power to regulate commerce among the several states, and is void.

The case of Emmert v. Missouri, 156 U. S. 296 holds that a statute of the state, by which peddlers of goods, going from place to place within the state to sell them, are required,  under a penalty, to take out and pay for license, and which makes no discrimination between residents or products of the state and those of another state, is not, as to peddlers of goods previously sent to them by manufacturers in other states, repugnant to the grant by the Constitution to Congress of the power to regulate commerce among the several states.  Also see the cases of Ex parte Overstreet, 46 S. W. 825; Crenshaw v. Arkansas, 227 U. S. 389; Baces v. State of Louisiana, 232 U. S. 334; G.H. & C. Railway Company, 2 Tex. 217.

In view of the foregoing authorities you are respectfully advised that it is the opinion of this department that any person, firm or corporation engaged in the business of soliciting and/or accepting orders for edible aquatic products when such products are to be shipped or delivered from another state to the purchaser in this state is not required to have a fish dealer's license.  But if a person, firm or corporation engaged in the business of a "wholesale fish dealer" or "retail fish dealer", as these terms are defined by the statute, has an agent or representative stationed at a place, other than the main place of business of such person, firm, or corporation, and who solicits and/or accepts orders for aquatic products to be sold and/or delivered by his principal to the purchaser within this state, such an agent or representative would not be required to have a fish dealer's license, but his principal must have an additional license for the "place of business" of the agent, as required by Subsection 11, Section 3, of Article 934a.  However, if an agent of the dealer has no established "place of business" where orders for aquatic products are received, but travels from city to city soliciting orders for aquatic products to be delivered by his principal, neither he nor his principal would be required to have a dealer's license by reason of such agency.

In reply to your second question, you are advised that if edible aquatic products are merely delivered by motor vehicle from outside the State of Texas and no sale is made within the state, such person would not be required to have a license.

Your third question is answered in the negative.

In reply to your fourth question, you are further advised that such license may be transferred one time, when the business to which it was issued changes ownership, and that such licenses are transferrable to a new business location under the same ownership any time, provided the statute is complied with regarding fees pertaining thereto in towns or cities of different populations.

Trusting that the foregoing answers your inquiries, we remain

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *Ardell Williams*

Ardell Williams
Assistant

APPROVED NOV 24, 1939

AW:JM

ATTORNEY GENERAL OF TEXAS