[L. A. No. 90.    Department Two.—March 4, 1896.]

# THOMAS B. ATKINSON, Appellant, v. JOHN W. LORBEER, Respondent.

Election Contest—Malconduct of Election Board—Irregularity—Good Faith.—An irregularity of an election board in not proceeding immediately to canvass the votes when the polls were closed, and in excluding all but two bystanders while preparations were being made for the tallying during the absence of one of the judges of the election for a half-hour after the polls were closed, and in waiting for his return before the tallying was proceeded with, when other bystanders were admitted, is not such malconduct as will vitiate the vote of the precinct, where it affirmatively appears by the testimony of the officers of the election, and the finding of the court in accordance with their testimony, that everything was done in good faith, and that no fraud was committed.

Id.—Mandatory and Directory Provisions—Fraud—Injury. — While the time and place of holding an election are of substance and mandatory, and must be complied with, and even directory provisions cannot be so grossly departed from as to make it impossible or extremely difficult to determine whether the fraud has been committed, or anything done which would affect the result, yet, as a general rule, the provisions for conducting an election, which are directory in their character, will not be literally enforced, where their nonobservance has occasioned no injury.

Appeal from a judgment of the Superior Court of Los Angeles County.   J. W. McKinley, Judge.

The facts are stated in the opinion of the court.

*Edwin A. Meserve,* and *C. E. Sumner,* for Appellant.

*Tonner & Fleming,* and *A. W. Hutton,* for Respondent.

McFARLAND, J.—This is an election contest brought under sections 1111–1127 of the Code of Civil Procedure, and presents the right to the office of marshal of the city of Pomona. Judgment was in favor of defendant, Lorbeer, who had been declared elected by the board of trustees. Plaintiff, Atkinson, appeals from the judgment upon the judgment-roll which includes findings. There is no statement or bill of exceptions. The question presented is whether or not the entire vote of the second ward of said city at the election involved here should be rejected. At that ward respondent received a majority of fifty-one votes; and if the entire vote at that ward be rejected the appellant would have a majority in the city. The court below refused to reject the vote of said ward.

It is contended by appellant that the entire vote of the second ward should be rejected on account of "malconduct on the part of the board of judges" of the election, under subdivision 1 of section 1111; and the main facts relied on to support this contention are, briefly, these: Immediately upon the closing of the polls the board of election removed all the bystanders except two from the room which constituted the polling place, and for one-half hour kept the door of said room locked, and kept the public, except said two bystanders, out of said room, and during said half-hour one of the judges of said election was absent. During that half-hour some of the members of the board took the ballots from the ballot-box and counted them, and, finding that there was one more ballot in the box than there were voters as shown by the poll lists, destroyed one of said ballots. The board also, while the room was in that condition, sealed up in envelopes all the unused ballots, and did other things necessary to a preparation for tallying, but

did not proceed to the tallying of the votes. At the expiration of the half-hour the door was opened and other bystanders went in, the absent judge returned, and the tallying commenced. At the trial three of the members of the board who were in the room during said half-hour were examined as witnesses and testified as to what was done during that time; and the court found that everything was done in good faith and that no fraud was committed.

Election contests arising out of irregularities of election officers frequently present to courts the alternative of either setting aside in the case in hand the honest and clear expression of the will of the majority of the voters, or of so construing the election laws as to open the door to future frauds which it is the purpose of those laws to prevent. Of course, neither the voters nor those voted for have any control over election officers; and to set aside the vote of a precinct, when there was clearly no fraud or any mistake affecting the result, for mere irregularities occasioned by the ignorance or carelessness of election boards would in many cases be a patent injustice. Moreover, a construction requiring an exceedingly strict compliance with all statutory provisions might tempt to irregularities contrived for the very purpose of vitiating the vote at a certain polling place, and, as was said in *Whipley* v. *McKune*, 12 Cal. 361, " might lead to more fraud than it would prevent." On the other hand, statutory provisions which are clearly mandatory must be substantially complied with; and even directory provisions cannot be so grossly departed from as to make it impossible or extremely difficult to determine whether fraud had been committed or anything done which would affect the result.

The provision of the statute which appellant contends was violated by the acts of the board as above stated is in section 1252 of the Political Code, and is as follows: "As soon as the polls are finally closed the judges must immediately proceed to canvass the votes given at such election. The canvass must be public, in the presence of

bystanders." This provision, according to the current of authorities, is merely directory. Provisions concerning the time and place of holding the election and officers holding the same, the legal qualifications of voters, and other matters of that character, are of substance and mandatory. "As a general rule, however, the regulations prescribed by law for conducting an election are directory merely, and will not be literally enforced, where their nonobservance has occasioned no injury." (Pol. Code, Deering's ed., sec. 1253, notes, and cases there cited; 1 Dillon on Municipal Corporations, sec. 197, and notes; Brightly's Election Cases, 448, et seq; *Whipley* v. *McKune, supra; Spraguè* v. *Norway,* 31 Cal. 174; *Keller* v. *Chapman,* 34 Cal. 640.) Section 1252 is not one of the new features of that part of the present election laws which is called the "Australian system," and which is in many respects mandatory. It has always been a part of the election laws; and so also has the provision of section 112 of the Code of Civil Procedure, which is as follows: " No irregularity or improper conduct in the proceedings of the judges, or any of them, is such malconduct as avoids an election, unless the irregularity or improper conduct is such as to procure the person whose right to the office is contested to be declared elected when he had not received the highest number of legal votes." (See *Whipley* v. *McKune, supra.*)

But provisions which come under the category of " directory" may be so grossly violated as to give rise to a suspicion of fraud or unfairness, and the circumstances may be such that a court will not enter upon the task of inquiry whether or not this suspicion can be removed, because, in the nature of things, no evidence upon the point could be satisfactory. (*Tebbe* v. *Smith,* 108 Cal. 101; 49 Am. St. Rep. 64.) When, however, it may be easily shown that the departure from a strict compliance with directory provisions was not accompanied with fraud or any act affecting the result, and such showing is made, then the vote will not be rejected.

(*Russell* v. *McDowell,* 83 Cal. 70.)    In the latter case the
subject is somewhat fully discussed in the opinion of
the court delivered by Chief Justice Beatty.    There the
alleged misconduct was the failure of the election offi-
cers to comply with sections 1225 and 1226 of the Polit-
ical Code, which provide that the name and registry
number of the voter, and in cities also the number of
the street where he lives, etc., must be called out in an
audible tone of voice by the officer receiving the vote,
and the residence must be recorded by the poll clerk.
The court, having stated the general rule as to directory
provisions, say also that the neglect of such provisions
designed to prevent fraud " is ground for rejecting the
entire vote of a precinct *if there is no means of purging
the poll.*"    And the court, in speaking of the omission of
the officers in that case, further say: " It casts suspicion
upon their integrity, and is sufficient *prima facie* to
make out a case of fraud.    No doubt such omission is
*susceptible of explanation,* and we are very willing to be-
lieve that the officers of these precincts erred through
ignorance of the law, and were not actually guilty of
fraudulent intent.    But as the case is presented we can-
not indulge that presumption.    The officers *were not
called as witnesses,* as they should have been, to prove
that they acted as they did through ignorance, and not
through fraudulent intent; and, in the *absence of any re-
butting proof* on this point, we feel constrained to hold
that the contestant made out a case of malconduct on
the part of the election board."    The rule to be deduced
from these views is that where the failure of an election
board to comply with a directory provision is of such a
character that it can be readily shown by competent
proof that no fraud was committed, and no harm done by
such failure, *and such proof is made,* then the vote will not
be rejected.    And such was the character of the alleged
misconduct in the case at bar.    The provision of section
1252 was not entirely ignored; for there were some by-
standers present during the short time when others were
excluded.    The election officers no doubt thought, inno-

cently though erroneously, that it was proper to clear the room of all except two bystanders while they were making preparations for tallying. But the fact that no fraud was committed and no wrong done during the half-hour was susceptible of easy proof, and such proof was made to the satisfaction of the trial court. The officers of the election were called as witnesses, " as they should have been" (*Russell* v. *McDowell, supra*), and upon their testimony, uncontradicted, the court made its finding. We think, therefore, that the refusal to reject the vote of the second ward was correct. There is nothing in this conclusion inconsistent with *Tebbe* v. *Smith, supra*. The part of the opinion in that case invoked related to the conduct of the election officers of Lake precinct. In the first place, taking the ballot-box away from the polling place during the day, leaving the ballots and all other materials at the polling-room, was such a gross violation of the statute, and presented such opportunities for fraud, that a court might well decline to inquire whether actual fraud had been committed. But, in the second place, the decision was not based solely upon the removal of the ballot-box, nor was it expressly said that such misconduct would, itself, warrant the rejection of the vote. That fact was mentioned in connection with the other and exceedingly important fact that the polls were not opened until 10 o'clock; and the cases cited in the opinion (*Knowles* v. *Yates*, 31 Cal. 82, and *People* v. *Seale*, 52 Cal. 72) were cases where the polls were not opened at the proper place or at the proper time. When the polls are not opened until several hours after the time fixed by law, it is practically impossible to show satisfactorily that no voter was prevented from casting his vote. Moreover, provisions as to time and place of holding the election are mandatory.

There are no other points made by appellant which are not covered by the above views.

The judgment is affirmed.

HENSHAW, J., and TEMPLE, J., concurred.