[No. F011029. Fifth Dist. June 27, 1989.]

DOUGLAS I. DANIELS, Plaintiff and Appellant, v.
NORMAN A. TERGESON, Defendant and Respondent.

## COUNSEL

Lawrence A. Haun and Donald I. Segerstrom, Jr., for Plaintiff and Appellant.

William G. Polley for Defendant and Respondent.

## OPINION

**BROWN (G. A.), J.**\*—Respondent Norman A. Tergeson was a candidate for fourth district supervisor in the County of Tuolumne at the June 7, 1988, primary election. The contested election was for an open seat; he received 51.6 percent of the votes cast.

Contestant and appellant Douglas I. Daniels, an elector and registered voter in the supervisorial district, filed this proceeding contesting the election of respondent on the ground he was not eligible for the office when elected (Elec. Code, § 20021, subd. (b)): specifically, that respondent was not a registered voter in the district at least 30 days before the deadline for filing nomination papers for the office as required by Government Code section 25041[1] (hereafter section 25041).

The trial court refused to invalidate the election on the ground that though respondent had been a registered voter for only 28 days before the deadline for filing his nomination papers, he had complied substantially with the requirements of the statute.

---

\*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.

[1]Government Code section 25041 in pertinent part reads: "[E]ach member [of the county board of supervisors] shall have been a registered voter of the district which he seeks to represent for at least 30 days immediately preceding the deadline for filing nomination documents for the office of supervisor, . . ."

The facts are not in dispute. The issue before us is one of law upon which we are free to exercise our independent judgment. (*Pacific Legal Foundation* v. *Unemployment Ins. Appeals Bd.* (1981) 29 Cal.3d 101, 111 [172 Cal.Rptr. 194, 624 P.2d 244].)

We will decide the statute must be strictly complied with and will reverse.

## FACTS

The deadline for filing nomination papers was March 16, 1988.[2] Section 25041 (fn. 1, *ante*) requires that a candidate be a registered voter in the district at least 30 days before the deadline for filing nomination papers, which in this case would be February 15, 1988. Respondent registered to vote by postcard affidavit signed February 16, 1988, and received by the Tuolumne County Clerk on February 17, 1988.[3] Respondent's registration on February 17 missed the deadline by two days. Thus he was a registered voter in the district for 28 rather than 30 days before filing nomination papers.

## DISCUSSION

I. *Is substantial compliance with section 25041 sufficient?*

Initially, it is noted section 25041 uses the word "shall." "Shall" means the requirement imposed is mandatory. There is no ambiguity in the language of the statute. Clear statutory language needs no interpretation. (*Holder* v. *Superior Court* (1969) 269 Cal.App.2d 314, 317 [74 Cal.Rptr. 853].) The wisdom of the legislation is not for us. Our duty is to enforce the statute as written. (*Milligan* v. *City of Laguna Beach* (1983) 34 Cal.3d 829, 831 [196 Cal.Rptr. 38, 670 P.2d 1121]; *California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 698 [170 Cal.Rptr. 817, 621 P.2d 856].)

The issue before us is not really one of determining what the statute means but of deciding whether substantial compliance satisfies the plain language of the statute.

Two election cases where the courts disqualified prospective candidates because they failed to comply with mandated deadlines are helpful. In *Steele* v. *Bartlett* (1941) 18 Cal.2d 573 [116 P.2d 780], nominating papers

---

[2] Elections Code section 6490.1 specifies that when an incumbent does not run for reelection, the deadline for filing nomination papers is the 83d day before the election.

[3] Elections Code section 301 provides that a properly executed registration is effective upon receipt by the county clerk.

for city council positions had to be filed "'not later than twelve o'clock noon on the *thirty-first* day before the election.'" (At p. 573.) The 31st day fell on a Sunday. Of the 11 candidates, 6 filed their papers on Monday, only 30 days before the election. The court held that code provisions extending by one day the time within which an act may be done when the last day to do the act falls on a Sunday or holiday, did not apply to statutes where an act must be done "not later" than a given number of days before a designated time. To permit such an extension would nullify the legislative intent that the act must be performed more than a designated number of days before the event specified. (*Id.* at p. 574.) Likewise, in *Griffin* v. *Dingley* (1896) 114 Cal. 481 [46 P. 457], where the statute permitted the filing of a certificate of nomination "not more than fifty nor less than thirty days before the day of the election," petitioner could not file the papers on the 28th day before the election. To hold that he could "would be in manifest disregard of the provisions of the statute." (*Id.* at p. 483.) These cases appear to compel strict compliance with statutory requirements for candidate qualification and are persuasive.

■ The effect of irregularities in elections depends on whether the violated statute is mandatory or directory. A violation of a mandatory provision vitiates an election. Departure from a directory provision does not render the election void if there has been substantial compliance with the law, and there is no indication that the result of the election was changed or the rights of the voters impaired by the violation. (*Rideout* v. *City of Los Angeles* (1921) 185 Cal. 426, 430-431 [197 P. 74].)

Whether a provision is mandatory or directory depends on the character of the act prescribed. If it goes to the substance or necessarily affects the merits or results of an election, the provision is mandatory. Provisions relating to the time and place of holding elections, the qualifications of voters and candidates and other matters of that character are mandatory. (*Atkinson* v. *Lorbeer* (1896) 111 Cal. 419, 422 [44 P. 162]; and see 28 Cal.Jur.3d, Elections, § 124, pp. 608-609.)

Thus, in *Atkinson* v. *Lorbeer, supra,* a case dealing with election officers at a polling place and conduct of the polls, the court held substantial compliance with statutory provisions is sufficient. The reason for the substantial compliance standard is that neither the voters nor the candidates have any control over the election officers. It would be a patent injustice to invalidate the vote of a precinct for mere irregularities occasioned by the ignorance or carelessness of election officers when there was no fraud or mistake which would alter the election result. Moreover, a construction requiring very strict compliance with statutory provisions pertaining to the conduct of the polls might lead to a contrivance of irregularities for the very purpose of

vitiating the vote of a certain polling place, and thereby causing more fraud than it would prevent. (111 Cal. 419 at p. 421; cf. *Kenworthy* v. *Mast* (1903) 141 Cal. 268, 271 [74 P. 841].)

 Section 25041 by its language is mandatory. It prescribes a specific qualification requirement for members of the board of supervisors. It necessarily affects the merits of the election because it determines who is and who is not an eligible candidate. Thus, violation of its terms renders a candidate ineligible for office.

Respondent relies on several nonelection cases and certain referendum cases which stand for the proposition that when the purpose of the statute is satisfied, literal compliance with its terms is not mandated. See *United States Fid. & Guar. Co.* v. *Keck* (1946) 75 Cal.App.2d 828, 831 [171 P.2d 731]—probate claim was valid where it substantially complied with Probate Code section 705 and affidavit supporting claim fully advised the executor of amount of the claim; *Kelso* v. *Board of Education* (1941) 42 Cal.App.2d 415 [109 P.2d 29]—submitted claim was adequate even though minor's claim against the school district for loss of an eye was signed by father rather than minor; *Citizens State Bank* v. *Gentry* (1937) 20 Cal.App.2d 415 [67 P.2d 364]—contractor would be considered licensed even though his license expired midway through building project and was renewed by his new corporation rather than by himself. Because these cases do not deal with the qualification to stand for office, they are not determinative.

The substantial compliance doctrine was applied in two election law cases dealing with referendums. In *California Teachers Assn.* v. *Collins* (1934) 1 Cal.2d 202 [34 P.2d 134], the court ordered the registrar of voters to file a section of an initiative petition even though the title was set out in 12- rather than 18-point type and contained 27 rather than the maximum 20 words. The court noted the requirements were intended to give information to the electors who are asked to sign initiative petitions. If that purpose was accomplished, substantial compliance was sufficient so long as "such compliance does no violence to a reasonable construction of the technical requirement of the law." (*Id.* at p. 204.) The court warned, however, substantial compliance should not be relied upon to determine every proceeding of a similar nature. Substantial compliance can be carried too far, and its application should not be relied on to save carelessly prepared petitions. (*Id.* at p. 205.)

Another referendum case, *Assembly* v. *Deukmejian* (1982) 30 Cal.3d 638 [180 Cal.Rptr. 297, 639 P.2d 939], reached a similar conclusion. There, the petition asked for the signer's "address as registered to vote" rather than the "residence address" as required by Elections Code section 3516, subdivision

(c). (*Id.* at p. 646.) The court refused to find the petitions invalid under the factual circumstances presented since their proponents had relied on a practice which not only had been accepted by the government entities charged with enforcing referendum procedures, but also had never been subjected to a challenge from any source. (*Id.* at p. 651.)

The referendum cases are not dispositive. There is a judicial policy to construe liberally the power of initiative and referendum. (30 Cal.3d at p. 652.) Thus, "technical deficiencies in referendum and initiative petitions will not invalidate the petitions if they are in 'substantial compliance' with statutory and constitutional requirements. [Citation.]" (*Ibid.*) We have found no case enunciating a similar policy applicable to Government Code candidate qualification statutes.

The rationale for substantial compliance with statutory provisions relating to election officers and conduct of the polls has no application in the realm of candidate qualifications. Consequently, the cases holding that substantial compliance with certain election laws is sufficient are inapplicable to section 25041. Respondent properly was charged with knowledge of the qualification requirements of the office he sought. When he failed to meet the specified deadline, he was ineligible for the office to which he was elected. (*Steele* v. *Bartlett, supra,* 18 Cal.2d 573 and *Griffin* v. *Dingley, supra,* 114 Cal. 481.)

## II. *Is section 25041 unconstitutional?*

■ Respondent argues section 25041 is an unconstitutional restriction upon his right to be a candidate for and hold public office and upon residents of the fourth district's right to vote. (Cal. Const, art. II, § 2; *Johnson* v. *Hamilton* (1975) 15 Cal.3d 461 [125 Cal.Rptr. 129, 541 P.2d 881].)

It is noted first that a 30-day residential requirement is constitutional though longer durational residential requirements have been held unconstitutional. (*Johnson* v. *Hamilton, supra,* 15 Cal.3d 461, 472; *Thompson* v. *Mellon* (1973) 9 Cal.3d 96, 106 [107 Cal.Rptr. 20, 507 P.2d 628, 65 A.L.R.3d 1029].)

The parties agree the rights involved are fundamental rights and the "strict scrutiny" standard applies to governmental restrictions on those rights. ■ Under the strict scrutiny standard of review, a state must prove the challenged provision intruding upon a constitutional right involves a compelling governmental interest, and the burden or restriction imposed by the provision is necessary to further that interest. (*Johnson* v. *Hamilton, supra,* 15 Cal.3d 461 at p. 466.)

■ The Legislature may prescribe qualifications for office but cannot enact arbitrary exclusions from office. Thus, qualifications for office must relate to the needs of office—e.g., age, integrity, training or residence—with the voters free to judge the individual fitness of the candidates who have those basic qualifications. If a classification is employed in setting qualifications, it must be nondiscriminatory. (*Zeilenga* v. *Nelson* (1971) 4 Cal.3d 716, 721 [94 Cal.Rptr. 602, 484 P.2d 578].)

■ Respondent contends the 30-day voter registration requirement for membership on the board of supervisors does not serve any compelling governmental interest. Appellant argues the registered voter requirement is a valid means to assure that supervisorial candidates are bona fide residents of the districts they seek to represent.

States have "compelling" reasons for requiring candidates for public office to establish their residence and eligibility for office within a reasonable and fixed period of time before the election. (*Dunn* v. *Blumstein* (1972) 405 U.S. 330, 343 [31 L.Ed.2d 274, 285, 92 S.Ct. 995].)

" 'An orderly system of election laws crystallizes the issues and candidates during a given time-span before the election. During this period the election officials prepare and distribute sample ballots and print official ballots. During this period the candidates address their appeals to the voters. The latter, in turn, weigh the alternatives. They may rationally resolve their choices only by assurance that all the candidates are eligible.' [Citation.]

"Accordingly, it has been suggested that a public entity may constitutionally require a prospective candidate to be 'a resident at the time he files his nominating papers or equivalent declaration of candidacy and for a period of not more than 30 days next preceding such date of filing.' [Citations.]

"Such a 30-day prefiling residence requirement seems reasonably necessary and convenient to accommodate the needs of election officials in their task of timely verification of the candidate's true residence prior to the preparation and distribution of ballots." (*Johnson* v. *Hamilton, supra,* 15 Cal.3d at p. 472.)

Analogously, if the state has a compelling reason for requiring a prospective candidate to be a resident 30 days before filing nomination papers, it can also require him to be a registered voter in the district at that time in order to validate he is a bona fide resident. As the Supreme Court noted, lengthy durational residence laws are no longer necessary to prevent fraud or the evasion of state voter standards, since today this purpose is served by

a system of voter registration. (*Dunn* v. *Blumstein, supra,* 405 U.S. at p. 346 [31 L.Ed.2d at pp. 286-287].) Moreover, the registered voter requirement has no unequal impact upon poor or minority candidates or voters. It falls with equal force on every candidate and creates a de minimis burden on each.

*Rosario* v. *Rockefeller* (1973) 410 U.S. 752 [36 L.Ed.2d 1, 93 S.Ct. 1245] is instructive. The court upheld a New York statute that required voters to enroll in the party of their choice at least 30 days before the general election in November in order to vote in the subsequent party primary. Petitioners attained voting age in 1971 but failed to register to vote before the November election. They challenged their statutory ineligibility to vote in the June 1972 primary. The court distinguished those cases in which a class of voters was entirely disenfranchised.

"[The statute] did not absolutely disenfranchise the class to which petitioners belong—newly registered voters . . . . [T]he statute merely imposed a time deadline on their enrollment, which they had to meet in order to participate in the next primary. . . . [Petitioners] could have registered and enrolled in the party of their choice before that date and been eligible to vote in the June 1972 primary. . . . Hence, if their plight can be characterized as disenfranchisement at all, it was not caused by [the statute], but by their own failure to take timely steps to effect their enrollment." (410 U.S. at pp. 757-758 [36 L.Ed.2d at p. 7], fn. omitted.)

Likewise, in this case, section 25041 did not absolutely bar respondent from office. Rather, it set a reasonable deadline for him to become a registered voter and thereby demonstrate he was a bona fide resident in order to be eligible for a seat on the board of supervisors.

Respondent submits the voter registration requirement adds nothing to the candidate's ability to perform the functions of the office. Rather, whether a candidate is registered to vote is a question of individual fitness which is best left to the voters to weigh. Respondent's contention has a certain facial appeal. However, the voter registration requirement provides one of the least intrusive means to assure that supervisorial candidates are residents of the districts they seek to represent. It thus serves a compelling state interest other than setting basic candidate qualifications.

Other means of verifying residency involve constitutional problems greater than the registration requirement. For example, requiring proof of payment of property taxes in the district would exclude renters as candidates. Requiring proof by way of address listed with the Department of Motor Vehicles would exclude unlicensed persons. And simply taking a

candidate's word that he is a resident would not adequately serve the compelling governmental interest of preventing election fraud and assuring that only district residents sit on the board of supervisors. Thus, section 25041 promotes the state's interest in regulating the election process to insure only qualified residents for office are put before the electorate. The statute is not unconstitutional.

Finally, respondent's contention that section 25041 denies the voters of the fourth supervisorial district equal protection of the laws is without merit. Voters do not have the "right" to vote for or be represented by statutorily unqualified candidates.

In light of the result we reach, the issue raised by appellant pertaining to the citation to unpublished minute orders of the Supreme Court need not be addressed.

The judgment is reversed, and the election of respondent to the office of fourth district supervisor is nullified. (*Pierce* v. *Harrold* (1982) 138 Cal.App.3d 415, 418-419 [188 Cal.Rptr. 458]; Gov. Code, § 1770, subd. (j).) Costs to appellant.

Best, Acting P. J., and Ardaiz, J., concurred.