TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

ROB BONTA
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | No. 26-601 |
| of | : | |
| | : | June 17, 2026 |
| ROB BONTA | : | |
| Attorney General | : | |
| | : | |
| NICOLE WELINDT | : | |
| Deputy Attorney General | : | |

DALILA BARAJAS, VERONICA AGUIRRE, GINGER L. WALLIS, CRYSTAL ROSEMARIE ARBALLO, TERRI SANTILLAN, MELISSA COBINE, LAURA COBINE, PAUL COBINE, VICTOR RESENDEZ, AMANDA RAMIREZ, LUTHER WALLIS, TERESA M. PIERE, THE COUNTY OF KINGS, and LUPE VILLA, IN HIS OFFICIAL CAPACITY AS THE REGISTRAR OF VOTERS OF THE COUNTY OF KINGS (the Relators) have applied for leave to sue ALVARO PRECIADO, LETICIA GAMEZ, PABLO HERNANDEZ, and DAVID REYNOSA (the Defendants) in quo warranto to remove them from the Avenal City Council.

We conclude that the application meets all three of the Attorney General's criteria to grant leave to sue: quo warranto is the appropriate remedy; the application raises a substantial legal issue; and resolution of that issue would serve the public interest. Consequently, we GRANT leave to sue.

## BACKGROUND

This application arises from a recall election of four of the City of Avenal's five Councilmembers, specifically, Alvaro Preciado, Leticia Gamez, Pablo Hernandez, and David Reynosa. Because a pre-certification dispute reached the Court of Appeal, we cite facts from the superior court's findings, in addition to the party's submissions here.

1

26-601

For years, the County of Kings has conducted the City's elections—a collaboration permitted by the state's Elections Code.[1] The City adopted resolutions providing for the County to conduct the City's elections in 2018, 2020, 2022, and 2024.[2] In May 2024, the City and County informally agreed that the County would continue to administer local elections on behalf of the City.[3]

In June 2025, Avenal residents began a recall process for four City Councilmembers.[4] In late June, recall proponent Dalila Barajas went to the County Elections Department to inquire about the recall process, explaining that the Avenal City Clerk had directed her there.[5] Barajas later returned to the County's office, after the City Clerk again directed her to the County and advised her that the County Registrar's Office was responsible for the election.[6]

Between June and December 2025, the Kings County Registrar of Voters engaged with City staff and officials on the recall process and election.[7] The superior court found that there was "an extensive series of communications and interactions" between the City and County, "extending over an approximately 6 month period, regarding the recall election."[8]

In November 2025, the County Registrar notified the City Clerk that the recall petitions satisfied the legal requirements and he would thus present certificates of sufficiency to the City Council at the December 11 City Council meeting.[9] The City posted on social media that the petitions had been validated and the City had to call a

---

[1] See Elec. Code, § 10002.

[2] Relators' Verified Statement of Facts in Support of Application for Leave to Sue in Quo Warranto, at p. 2, ¶ 4 (Relators' SoF); *City of Avenal v. Villa* (Super. Ct. Kings County, April 23, 2026, No. 26CU0106) Ruling: Motion for Preliminary Injunction, at p. 2 (Superior Court Order).

[3] Relators' SoF, *supra*, at p. 3, ¶ 7; Superior Court Order, *supra*, at p. 2.

[4] Relators' SoF, *supra*, at pp. 3-4, ¶¶ 9-10; Superior Court Order, *supra*, at p. 2.

[5] Relators' SoF, *supra*, at p. 3, ¶ 9.

[6] *Id.* at p. 4, ¶ 10.

[7] *Id.* at p. 4, ¶ 12; Superior Court Order, *supra*, at pp. 2-4, 8-9.

[8] Superior Court Order, *supra*, at p. 1.

[9] *Id.* at p. 4; Relators' SoF, *supra*, at p. 5, ¶ 16.

special election.[10]  The County Registrar was ultimately unable to present the petitions at the December 11 meeting because the Councilmembers facing recall failed to appear.[11]

On December 25, 2025, the City Attorney faxed a letter to the County stating that the City did not want the County Registrar to conduct the recall election.[12]  "Due to technical errors with the fax machine[,] the [Registrar] and the County were not aware of the City's objections" until weeks later.[13]

At the January 8, 2026, City Council meeting, the County Registrar presented the certificates of sufficiency to the City Council and City Clerk.[14]  Under Elections Code section 11240, "[w]ithin 14 days after the meeting at which the governing body received the certificate of sufficiency . . ., the governing body shall issue an order stating that an election shall be held pursuant to this article to determine whether or not the officer named in the petition shall be recalled."  The City declined to issue an order to hold a recall election.[15]  In a letter dated January 14, 2026, the City Attorney expressed the view that the County Registrar had acted outside his authority in conducting the recall petition process.[16]

The County, however, concluded that the 14-day statutory clock had been triggered.[17]  Because the City did not issue an order of election, the County Registrar on January 27 set the recall election for three months later, April 28.[18]

On March 4, the City filed a petition for a writ of mandamus in superior court.[19] In early April, the City applied for a preliminary injunction to restrain the April 28 recall election.[20]  The City argued that the County was conducting the election without lawful

---

[10] Relators' SoF, *supra*, at p. 6, ¶ 19.

[11] *Id.* at p. 6, ¶ 21; Superior Court Order, *supra*, at p. 4.

[12] Relators' SoF, *supra*, at p. 7, ¶ 25 & fn. 3; Superior Court Order, *supra*, at pp. 6, 10.

[13] Superior Court Order, *supra*, at p. 6; see also Relators' SoF, *supra*, at p. 7, ¶ 25 & fn. 3.

[14] Relators' SoF, *supra*, at p. 7, ¶ 22.

[15] *Id.* at p. 7, ¶ 24.

[16] *Id.* at p. 7, ¶ 24 & fn. 2.

[17] See *id.* at p. 8, ¶¶ 28-29.

[18] *Id.* at p. 8, ¶¶ 28-30; see also Elec. Code, § 11242, subd. (a) ("The election shall be held not less than 88, nor more than 125, days after the issuance of the order").

[19] Relators' SoF, *supra*, at p. 8, ¶ 32.

[20] *Id.* at pp. 8-9, ¶¶ 33, 37.

authority to do so.[21] The City acknowledged that Elections Code section 10002 provides that a city governing board "may by resolution request" that the county conduct an election.[22] But the City maintained that the election was void because the City Council had not passed a resolution as to the recall election.[23]

On April 23, the superior court denied the City's request for a preliminary injunction.[24] The court concluded that the City had not shown a likelihood of success on the merits because the City had reached an informal agreement with the County and had for months been treating the County as having the authority to conduct the election.[25] Violations of different election provisions, the court explained, may carry different consequences.[26] Election provisions that go to the merits or results of the election, including provisions "relating to the time and place of holding elections, [or] the qualifications of voters and candidates," are mandatory. Violations of mandatory provisions vitiate an election.[27] By contrast, other types of election regulations are directory. Departure from a directory provision will not void an election where "there has been substantial compliance with the law, and there is no indication that the result of the election was changed or the rights of the voters impaired."[28]

Applying that distinction, the superior court concluded that section 10002, permitting the City by resolution to request that the County render election services, is directory. The court reasoned that whether the County or City supervises the election has no bearing on the merits or results of the election or the qualifications of candidates or voters.[29] And the court concluded that there was substantial compliance with the statute because the County took "all necessary steps to ensure compliance with the Elections Code," satisfying the statutory purpose.[30]

---

[21] Superior Court Order, *supra*, at p. 5.

[22] See *ibid.*

[23] *Id.* at pp. 5-6.

[24] *Id.* at p. 14.

[25] *Id.* at p. 9.

[26] *Id.* at p. 7.

[27] *Ibid.*, quoting *Daniels v. Tergeson* (1989) 211 Cal.App.3d 1204, 1208.

[28] *Ibid.*, quoting *Daniels v. Tergeson*, *supra*, 211 Cal.App.3d at p. 1208.

[29] *Id.* at p. 7.

[30] *Id.* at p. 11.

4

The superior court further concluded that the County was likely to have equitable defenses—laches and unclean hands—to the City's arguments.[31] As to laches, the court found that the City had "unreasonably delayed in asserting that the County lacked the authority to administer the election and both acquiesced in the County administering that election for six months as well as the County suffering prejudice in the expenditure of funds, time, resources and personnel in administering the recall election as a result of that delay."[32] And applying the unclean hands doctrine "would promote a strong public policy of allowing our citizens to participate in our democracy by exercising their constitutional right to elect their representatives."[33]

Finally, the superior court held that vitiating the election would significantly impair the democratic process. The court found that the City had twice directed a recall proponent to the County to start the petition.[34] The City "then spent six months in communications with the County in what can only be described as working with the County's administering of that very recall election."[35] It was not until after the County told the City that there were sufficient signatures for a recall election and attempted to deliver the certificates of sufficiency that the City raised an objection.[36] The superior court warned of the grave risk in stopping an election where a municipality misleads the voting public and tells them to start the process over.[37] "Such a ruling," the court cautioned, "would clearly undermine our democratic process, the public's confidence in our governmental bodies and would cause irreparable harm to the form of government."[38]

The City filed a petition for a writ of mandate in the Court of Appeal.[39] The Court of Appeal stayed the trial court proceedings and directed the County Registrar "to sequester the ballots from th[e] election, to refrain from tallying and canvassing the ballots, and to refrain from certifying the results of th[e] election pending further order of

---

[31] *Id.* at pp. 9-11.

[32] *Id.* at p. 11.

[33] *Id.* at p. 10.

[34] *Ibid.*

[35] *Ibid.*

[36] *Id.* at p. 4.

[37] *Id.* at p. 13.

[38] *Ibid.*

[39] Relators' SoF, *supra*, at p. 9, ¶ 38.

5

this Court."[40]  The court also ordered briefing on the issues.[41]  After "fully review[ing] the record provided in th[e] matter, along with the various briefs submitted by the parties," the court denied the petition for a writ of mandate and permitted the Kings County Registrar of Voters to resume processing the ballots and certifying the election results.[42]

The votes were canvassed and certified.[43]  With over three-quarters of voters voting "Yes" to recalling each Councilmember, the County Registrar of Voters certified that Councilmembers Preciado, Gamez, Hernandez, and Reynosa had been recalled.[44]

Despite the election results, the Defendants continue to occupy office, participate in City Council meetings, and approve City expenditures.[45]  At the June 11 City Council meeting, three of the Defendants approved a resolution declaring the recall election illegitimate and asserting that they have a duty to continue acting as Councilmembers.[46]

Also on June 11, twelve recall proponents applied to the Attorney General for permission to sue the four Councilmembers subject to the recall in quo warranto to remove them from office.  The County of Kings and the County Registrar of Voters later filed a second application, seeking to join the recall proponents as co-relators.  All parties here agree that proceeding in a single quo warranto suit with both sets of applicants joined as relator plaintiffs is appropriate, so we refer collectively to all applicants as the Relators.

The Relators contend that the Defendants are unlawfully holding office.  The Relators cite Elections Code section 11382, which provides that if a majority of votes on a recall are "Yes," then the local officer is removed and the office shall be vacant.  The Relators also argue that the Defendants are violating Government Code section 36503.5,

---

[40] *City of Avenal v. Superior Court of Kings County* (Ct. App., Fifth Dist., Apr. 27, 2026, No. F091517) Order.

[41] *Ibid.*

[42] *City of Avenal v. Superior Court of Kings County* (Ct. App., Fifth Dist., May 13, 2026, No. F091517) Order.

[43] Relators' SoF, *supra*, at p. 10, ¶ 48.

[44] Kings County, April 28, 2026, City of Avenal Recall Election, Final Official Results (May 27, 2026), https://www.countyofkingsca.gov/home/showpublisheddocument/40759/6391549832953 30000 (Official Election Results); see Relators' SoF, *supra*, at p. 10, ¶ 48.

[45] Relators' SoF, *supra*, at p. 10, ¶¶ 49-50.

[46] Avenal Res. No. 2026-38.

6

which prohibits officers facing a recall, or who have been recalled, from participating in actions that expend public funds.

## ANALYSIS

"Quo warranto" refers to the legal process to challenge an individual's right or eligibility to a public office.[47]  Code of Civil Procedure section 803 provides in pertinent part that the Attorney General may, "upon a complaint of a private party," bring an action in the name of the People of the State of California "against any person who usurps, intrudes into, or unlawfully holds or exercises any public office."

A private party that seeks to pursue a quo warranto action must apply for and obtain the Attorney General's consent.[48]  The Attorney General performs a "gatekeeping" role in quo warranto litigation:  "[t]he remedy of quo warranto belongs to the state in its sovereign capacity, to protect the interests of the state as a whole and guard the public welfare, and the Attorney General is the proper one to determine, in the first instance, when the public interests justify a resort to this remedy."[49]

In determining whether to authorize a quo warranto action, we do not attempt to resolve the merits of the controversy.[50]  Rather, we consider (1) whether quo warranto is an available and appropriate remedy; (2) whether the proposed relator has raised a substantial issue of law or fact that warrants judicial resolution; and (3) whether authorizing the quo warranto action will serve the public interest.[51]

Here, the answer to all three questions is "yes."  We therefore grant leave to sue.

## 1.  Availability of the Quo Warranto Remedy

We turn first to whether quo warranto is the appropriate legal procedure for this challenge.  Quo warranto is the proper legal process to challenge an individual's right to hold a public office, including a city council seat.[52]  The Relators challenge the Defendants' continued holding of their City Council seats after a majority of voters voted to recall each of them.  If a majority of voters vote in favor of recalling a local officer,

---

[47] *Nicolopulos v. City of Lawndale* (2001) 91 Cal.App.4th 1221, 1225-1226.

[48] *Id.* at pp. 1228-1229.

[49] *People ex rel. Internat. Assn. of Firefighters, etc. v. City of Palo Alto* (2024) 102 Cal.App.5th 602, 619.

[50] *Rando v. Harris* (2014) 228 Cal.App.4th 868, 879.

[51] *Ibid.*

[52] See Code Civ. Proc., § 803; *Nicolopulos v. City of Lawndale*, *supra*, 91 Cal.App.4th at pp. 1225-1226; 87 Ops.Cal.Atty.Gen. 30, 31 (2004).

"the officer is removed and the office shall be vacant until it is filled according to law."[53] The Defendants, however, continue to claim title to and exercise the powers of their offices. Because the Relators seek to challenge the Defendants' rights to remain in office, we conclude that quo warranto is the correct legal process.

## 2. Substantial Issue of Law or Fact Warranting Judicial Resolution

We next examine whether the application presents a substantial issue of law or fact warranting judicial resolution. The Relators argue that there is a substantial issue of law as to whether Elections Code section 11382 applies and operates to remove the Defendants from the City Council. That statute provides that "[i]f a majority of the votes on a recall proposal for a local officer are 'Yes', the officer is removed and the office shall be vacant until it is filled according to law, provided that the officer who was the subject of the recall election shall not be appointed to fill the vacancy in that office."[54]

We conclude that there is a substantial legal issue as to the application of section 11382 here. The majority of voters voted to remove Councilmembers Preciado, Gamez, Hernandez, and Reynosa.[55] The plain terms of the statute appear to support the Relators' argument that the Defendants are therefore "removed and the office[s] shall be vacant."[56] Indeed, the Defendants do not dispute that there is a substantial legal issue as to whether each of them is lawfully occupying office. Because we conclude there is a substantial legal issue here, we need not consider the other legal issues the parties raise.

## 3. Public Interest in Favor of Authorizing Suit

Finally, we consider whether granting leave to sue will serve the public interest. Generally, the existence of a substantial question of law or fact warranting judicial resolution presents a sufficient "public purpose" to permit an action in quo warranto.[57] That is particularly true here, where the substantial question goes to whether the Defendants are unlawfully disregarding election results. As the superior court explained, there exists "a strong public policy of allowing our citizens to participate in our democracy by exercising their constitutional right to elect their representatives."[58] Granting leave to sue is in the public interest.

---

[53] Elec. Code, § 11382.

[54] *Ibid.*

[55] Official Election Results, *supra*.

[56] Elec. Code, § 11382.

[57] E.g., 98 Ops.Cal.Atty.Gen. 94, 101 (2015); 95 Ops.Cal.Atty.Gen. 77, 87 (2012).

[58] Superior Court Order, *supra*, at p. 10; see *Curtis v. Board of Supervisors* (1972) 7 Cal.3d 942, 965-966.

The Defendants do not dispute that the public interest will be served by allowing the Relators to sue Gamez and Reynosa. The Defendants argue, however, that allowing a quo warranto action is not in the public interest as to the remaining two Defendants, Preciado and Hernandez. The Defendants' arguments do not alter our conclusion.

First, the Defendants argue that it is not in the public interest to authorize suit against Preciado and Hernandez because their terms expire in November 2026, at which time City residents will vote to fill their seats. We are not persuaded. If the Relators are correct on the merits, then the Defendants are not lawfully occupying office. It would not be in the public interest to permit elected officials to disregard election results. "While we cannot say with certainty whether a court will resolve this matter before" November, we believe that allowing the judicial process to proceed serves the public interest in these circumstances.[59]

Second, the Defendants argue that removing all four Councilmembers would leave the City Council without a quorum, harming the Council's ability to maintain the functions of city government. But if a court ultimately concludes that the Defendants were removed in the recall election, then any impact on city operations would result from the expressed will of the City's electorate. In any event, as with past quo warranto applications raising similar arguments, we view the Defendants' practical concern as a factor for the court to consider in fashioning any remedy, not as a bar to granting leave to sue.[60]

The Defendants make various other requests as to how litigation should proceed here. The Defendants may raise their arguments at the appropriate junctures in the superior court.[61]

Accordingly, the application for leave to sue in quo warranto is GRANTED.

---

[59] 105 Ops.Cal.Atty.Gen. 101, 108 (2022) (granting leave to sue where six months remained on challenged term).

[60] *Id.* at p. 109; 106 Ops.Cal.Atty.Gen. 14, 19-20 (2023).

[61] For example, the Defendants request that we require the Relators to file in or move the litigation to a venue outside of Kings County. The Defendants may raise this request to change venue at a later time. (See *County of San Bernardino v. Superior Court* (1994) 30 Cal.App.4th 378, 384-385 [under California Supreme Court precedent, Code of Civil Procedure "section 394 'is a removal statute'" that "does not control original venue"].)

9

26-601